IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Criminal Case No. 05–cr–00545–EWN

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.  JOSEPH P. NACCHIO,

     Defendant.

## ORDER AND MEMORANDUM OF DECISION

This is a criminal securities fraud and insider trading case. The United States of America ("the Government") alleges that Defendant Joseph P. Nacchio sold Qwest Communications International Inc. ("Qwest") common stock and other Qwest securities while in possession of material, non-public information. This matter is before the court on: (1) Defendant's "Renewed Motion to Dismiss Indictment," filed May 1, 2006; (2) Defendant's "Motion to Strike Surplusage From the Indictment," filed May 1, 2006; and (3) Defendant's "Objections to the Government's Bill of Particulars and Motion For an Order Directing the Government to Comply with the Court's March 24, 2006 Order," filed May 1, 2006. Jurisdiction is based on 15 U.S.C. § 78j (2006), 15 U.S.C. § 78ff (2006), 17 C.F.R. § 240.10b–5 (2006), 17 C.F.R. § 240.10b5–1 (2006), 18 U.S.C. § 981 (2006), and 28 U.S.C. § 2461 (2006).

**FACTS**

*1.   Factual Background*

The following facts are taken from the Government's indictment. From January 1997 through June 2002, Qwest employed Defendant Joseph P. Nacchio as the Chief Executive Officer and a member of the Board of Directors. (Indictment 15 U.S.C. § 78j, 15 U.S.C. § 78ff, 17 C.F.R. § 240.10b-5, 17 C.F.R. § 240.10b5-1, 18 U.S.C. § 981, 28 U.S.C. § 2461 ¶ 1 [filed Dec. 20, 2005] [hereinafter "Indictment"].) Qwest, through Defendant, and others, reported its financial results, including its revenues, earnings, and growth rates to the public each fiscal year. (*Id.* ¶ 3.) Qwest reported its financial results in press releases, direct communications with investors and investment analysts, and quarterly and annual reports to the United States Securities and Exchange Commission ("SEC"). (*Id.*) Qwest also issued financial guidance generally referred to as "targets" to the investing public concerning Qwest's future revenue, growth, and earnings. (*Id.*) Qwest's business included two types of revenue: recurring revenue and non-recurring revenue. (*Id.* ¶ 5.) Recurring revenue was revenue that Qwest earned each month during the life of a customer as it rendered services to that customer. (*Id.*) Non-recurring revenue typically resulted from one-time quarter-end transactions. (*Id.*) The Government contends that beginning no later than December 4, 2000 through September 10, 2001, Defendant was aware of material, non-public information about Qwest's business, including, but not limited to:

> (a) Qwest's publicly stated financial targets, including its targets for 2001 were extremely aggressive and a "huge stretch;" (b) in order to achieve its publicly stated financial targets for 2001, Qwest would be required to significantly increase

> its recurring revenue business during the first few months of 2001; (c) Qwest's past experience or "track record" in growing recurring revenue at a sufficient rate to meet is publicly stated financial targets was poor; (d) Qwest's recurring revenue business was underperforming from early 2001 and was not growing at a sufficient rate to meet Qwest's publicly stated financial targets; (e) there were material undisclosed risks relating specifically to Qwest's recurring and non-recurring revenue streams that put achievement of Qwest's 2001 publicly stated financial targets in jeopardy; (f) the gap between Qwest's publicly stated financial targets and Qwest's recurring revenue was increasing, thus increasing Qwest's reliance on risky and unsustainable one-time transactions; (g) there would be insufficient non-recurring revenue sources to close the gap between Qwest's publicly stated financial targets and its actual performance.

(*Id.* ¶ 6.)

Defendant's stock sales accelerated in January of 2001. (*Id.* ¶ 8.) The Government contends that beginning in January 2001 through September 10, 2001, Defendant did "knowingly and willfully sell, using the instrumentalities of interstate commerce and the facilities of a national securities exchange more than [one-hundred million dollars] worth of Qwest common stock . . . while aware of and on the basis of material, non-public information . . . ." (*Id.* ¶ 9.) At all times relevant to this indictment, Qwest had an insider trading policy prohibiting its employees from selling Qwest common stock and other Qwest securities while in possession of material, non-public information. (*Id.* ¶ 4.) The Government alleges forty-two counts in the indictment. (*Id.* ¶ 9.)

## 2. *Procedural History*

On December 20, 2005, the Government handed down the indictment in this case. (Indictment.) The indictment contains forty-two counts of securities fraud and insider trading pursuant to: (1) 15 U.S.C. § 78j, (2) 15 U.S.C. § 78ff, (3) 17 C.F.R. § 240.10b–5, (4) 17 C.F.R.

§ 240.10b5–1, 18 U.S.C. § 981, and (6) 28 U.S.C. § 2461. On February 10, 2006, Defendant filed his motion to dismiss. (Mot. for Dismissal of Indictment [filed Feb. 10, 2006].) Defendant argued that: (1) the indictment failed to allege the requisite materiality, (*id.* at 8–12); (2) the Government's judicial admission rendered the allegations against Defendant immaterial, (*id.* at 12–15); (3) the indictment failed to allege an offense, (*id.* at 15–18); (4) the allegations of the indictment were immaterial under the "efficient market" test, (*id.* at 18–23); and (5) the forfeiture allegations of the indictment were demonstrably deficient. (*Id.* at 23–25.) Additionally, on February 10, 2006, Defendant filed a motion for a bill of particulars. (Mot. for Bill of Particulars [filed Feb. 10, 2006].) On February 24, 2006, the Government filed a response to Defendant's motion to dismiss. (Gov't's Resp. to Def.'s Mot. to Dismiss the Indictment [filed Feb. 24, 2006].) Similarly, on February 24, 2006, the Government filed its response to Defendant's motion for a bill of particulars. (Gov't's Resp. to Def.'s Mot. for Bill of Particulars [filed Feb. 24, 2006].)

On March 24, 2006, the court held a hearing on Defendant's motions to dismiss the indictment and for a bill of particulars. (Rep.'s Tr. Pre-Trial Conference Mar. 24, 2006 [hereinafter "Rep.'s Tr."].) The court denied the motion to dismiss and granted the bill of particulars in part and denied it in part. (*Id.* at 27.) On May 1, 2006, Defendant filed a renewed motion to dismiss the indictment. (Renewed Mot. to Dismiss Indictment [filed May 1, 2006] [hereinafter "Renewed Mot. to Dismiss"].) Defendant contends that dismissal is appropriate because the Government is disingenuous and the bill of particulars is inadequate. (*Id.*) On June 2, 2006, the Government filed a response to Defendant's motion. (Gov't's Resp. to Def.'s Renewed

Mot. to Dismiss Indictment [filed June 2, 2006] [hereinafter "Gov't's Resp. to Mot. to Dismiss"].)

On May 1, 2006, Defendant filed a motion to strike surplusage from the indictment. (Mot. to Strike Surplusage from the Indictment [filed May 1, 2006] [hereinafter "Mot. to Strike"].) Defendant requests that the court "strike as surplusage from the indictment all references to acts and events which occurred after May 29, 2001, which was the date of the last charged, completed offense." (*Id.* at 1.) Additionally, Defendant requests that the court strike all references to Qwest's insider-trading policy. (*Id.* at 6.) On June 2, 2006, the Government filed a response to Defendant's motion to strike surplusage. (Gov't's Resp. to Mot. to Strike Surplusage from the Indictment [filed June 2, 2006] [hereinafter "Gov't's Resp. to Mot. to Strike"].)

On April 10, 2006, in response to the court's March 24, 2006 order, the Government filed its bill of particulars. (Gov't's Bill of Particulars [filed Apr. 10, 2006] [hereinafter "Bill of Particulars"].) On May 1, 2006, Defendant filed an objection to the Government's bill of particulars. (Objections to the Gov't's Bill of Particulars and Mot. for an Order Directing the Gov't to Comply With the Court's March 24, 2006 Order [filed May 1, 1006] [hereinafter "Def.'s Objections to Bill"].) Defendant objects to the Government's bill of particulars as it relates to "the allegedly material, non-public information." (*Id.* at 3.) Specifically, Defendant objects to paragraphs 6, 6(e), 6(f), and 8. (*Id.*, *passim*.) On June 2, 2006, the Government filed a response to Defendant's objections. (Gov't's Resp. to Def.'s Objections to the Gov't's Bill of Particulars [filed June 2, 2006] [hereinafter "Gov't's Resp. to Objections"].)

5

## ANALYSIS

### *1.  Renewed Motion to Dismiss Indictment*

Defendant moves, once again, to dismiss the indictment, alleging "the government cannot or will not offer proof of an essential element of all [forty-two] counts against [Defendant] — the 'materiality' of his alleged 'inside information.'" (Renewed Mot. to Dismiss at 1.)  While Defendant couches his motion as a "renewed motion to dismiss," Defendant does not raise any new arguments in favor of dismissal.  (*Id.*, *passim*.)  Defendant seeks to use the court's observation during the March 24, 2006 hearing that it "does not view this indictment as a model indictment" to bolster his position that the court should dismiss the indictment.  (*Id.*)  Rather than assert concrete arguments, Defendant devotes thirteen pages detailing his belief that "the [G]overnment's disingenuousness and the woeful inadequacy of its [b]ill [of particulars] are matters obliged to be brought to the Court's attention."  (*Id.* at 4.)  For the reasons stated in the March 24, 2006 order, Defendant's renewed motion to dismiss the indictment is denied.  The court hereby re-adopts and incorporates all of the reasoning set forth therein.  Despite this, I pause briefly to discuss Defendant's arguments regarding the Government's "disingenuousness." I address the bill of particulars below in the context of "Defendant's Objections to the Government's Bill of Particulars," filed May 1, 2006.

Defendant contends that "[t]he [G]overnment, for reasons of its own, chose to conceal from the [c]ourt the true basis for the first two charged trades and instead inaccurately related them to 'severe warnings' in December and January." (*Id.* at 6.)  Specifically, Defendant alleges that the Government's characterization to the court regarding Defendant's impetus to trade on the

6

second and third days of January 2001 is inaccurate. (*Id.* at 5.) In substance, Defendant urges the court to rule on evidentiary issues relating to the crux of the Government's case. This is wholly inappropriate at this stage of the litigation. Accordingly, Defendant's argument regarding the Government's "disingenuousness" is unavailing. (*See* Renewed Mot. to Dismiss at 4.)

### *2.   Motion to Strike Surplusage From the Indictment*

As stated above, Defendant moves this court to strike from the indictment as surplusage all references to acts and events which occurred after May 29, 2001 and any reference to Qwest's insider trading policy. (Mot. to Strike at 1.) The indictment alleges forty-two instances of insider trading by Defendant with the final sale alleged to have been affected on May 29, 2001. (Indictment ¶ 9.) The indictment contains at least three references to Defendant's conduct after May 29, 2001. (*Id.* ¶¶ 3, 6, 9.)

Federal Rule of Criminal Procedure 7(d) empowers district courts to "strike surplusage from the indictment or information." Fed. R. Crim. P. 7(d) (2006). A court may strike as surplusage "allegations not relevant to the charge at issue and inflammatory and prejudicial to the defendant." *United States v. Collins*, 920 F.2d 619, 631 (10th Cir. 1990) (citing *United States v. Figueroa*, 900 F.2d 1211, 1218 [8th Cir. 1990]). Courts employ an "exacting standard" and will not strike "[w]ords . . . from the indictment unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." *United States v. Bullock*, 451 F.2d 884, 888 (5th Cir. 1971); *see also United States v. Hill*, 799 F. Supp. 86, 88 (D. Kan. 1992); *United States v. Eisenberg*, 773 F. Supp. 662, 700 (D. N.J. 1991). Indeed, this standard is "met only in rare cases." *Eisenberg*, 773 F. Supp. at 700.

The Government contends that the alleged acts in the indictment which occurred after May 29, 2001 are relevant to the securities fraud scheme, specifically to show motive, knowledge, and intent. The Government also urges that such evidence is not rule 404(b) evidence at all. (Gov't's Resp. to Mot. to Strike at 3–4.) Defendant, on the other hand, argues that the offense of securities fraud is not continuing and is complete with the last purchase or sale of company stock — here, May 29, 2001. (Mot. to Strike at 4.) Alternatively, Defendant requests that this court hold an evidentiary hearing to determine if such evidence is admissible under Federal Rule of Evidence 404(b). (*Id.* at 5.) The parties agree that the Tenth Circuit allows evidence of acts subsequent to the charged offenses to establish motive, knowledge, and intent under Federal Rule of Evidence 404(b). (Def.'s Mot. to Strike at 5; Gov't's Resp. to Mot. to Strike at 3–5.)

In practical effect, Defendant is moving in limine for an order excluding evidence of any acts subsequent to May 10, 2001. Indeed, this evidence may prove to be inadmissible or prejudicial, but this determination cannot be made based on a motion to dismiss surplusage from the indictment. It is premature to determine whether the evidence must be stricken from the indictment at this stage of the proceedings. In light of the fact that this court does not make a practice of reading the entire indictment to the jury at the outset of trial, the inclusion of this material in the indictment is not prejudicial nor does inclusion suspend the rules of evidence. So construed, the motion to strike surplusage from the indictment is best deferred to a later point in the proceedings. Accordingly, this motion will be denied, without prejudice to renewal at a later point in these proceedings.

### 3. *Objections to the Government's Bill of Particulars and Motion For an Order Directing the Government to Comply With the Court's March 24, 2006 Order*

On March 24, 2006, the court addressed Defendant's request for a bill of particulars. The court partially granted the Defendant's request "in order to enable the [D]efendant to prepare for trial." (Repr.'s Tr. at 29.) Specifically, the court determined that the Government is required to: (1) identify the financial targets referred to in paragraph 6(a); (2) identify the financial targets referred to in paragraph 6(b); (3) specify or identify the "past experience" or "track record" referred to in paragraph 6(c); (4) identify which financial targets allegedly would not be met in 6(d); (5) identify the material undisclosed risks, which financial targets were in jeopardy, and what way the risks put the financial targets in jeopardy as described in paragraph 6(e); (6) identify the gap or specify the gap, recurring revenue, increased revenue, and the risky and unsustainable one-time transactions referred to in 6(f); and (7) identify what risky and unsustainable one-time transactions Qwest was relying on that are referred to in paragraph 6(g). (*Id.* at 30–31.) As stated above, the Government filed its bill of particulars on April 10, 2006. (Bill of Particulars.) Defendant objects to the Government's bill of particulars as it relates to "the allegedly material, non-public information." (Def.'s Objections to Bill at 3.) Specifically, Defendant contends that the Government: (1) does not elaborate on the material non-public information in paragraph six; (2) does not describe the material undisclosed risks referred to in paragraph 6(e); (3) failed to identify the recurring revenue and the risky and unsustainable one-time transactions referred to in paragraph 6(f); and (4) does not identify the additional material, non-public information referenced in paragraph eight. (*Id.* at 4–7.) I evaluate Defendant's arguments in turn.

### *a.     Paragraph Six of the Indictment*

Paragraph six of the indictment states:

> [n]o later than December 4, 2000, through and including September 10, 2001, [Defendant] was aware of material, non-public information about Qwest's business, including, but not limited to: (a) that Qwest's publicly stated financial targets, including its targets for 2001, were extremely aggressive and a "huge stretch;" (b) that in order to achieve its publicly stated financial targets for 2001, Qwest would be required to significantly increase its recurring revenue business during the first few months of 2001; (c) that Qwest's past experience or "track record" in growing recurring revenue at a sufficient rate to meet its publicly stated financial targets was poor; (d) that Qwest's recurring revenue business was underperforming from early 2001 and was not growing at a sufficient rate to meet Qwest's publicly stated financial targets; (e) that there were material undisclosed risks relating specifically to Qwest's recurring and non-recurring revenue streams that put achievement of Qwest's 2001 publicly stated financial targets in jeopardy; (f) that the gap between Qwest's publicly stated financial targets and Qwest's recurring revenue was increasing, thus increasing Qwest's reliance on risky and unsustainable one-time transactions; and (g) that there would be insufficient non-recurring revenue sources to close the gap between Qwest's publicly stated financial targets and its actual performance.

(Indictment ¶ 6.) On March 24, 2006, the court ordered the Government, with respect to paragraph six, to identify "all material non-public information that the Government claims [Defendant] was aware of between December 4, 2000 and September 10, 2001." (Repr.'s Tr. at 29.) Specifically, the court noted that this information is "necessary to defend against these [forty-two] charges, because the indictment right now simply charges that he was aware of this information without saying when he became aware of it or without tying it to any particular count in the indictment." (*Id.*) The Government's bill of particulars sufficiently complies with the court's order with respect to paragraph six.

The Government's bill of particulars sets forth in sufficient detail the material non-public information the Government intends to rely upon. The bill of particulars identifies the material inside information Defendant was privy to no later than January 2, 2001. Specifically, the Government states Defendant received information in August 2000, "following the Qwest/US West merger when [] Defendant met with Qwest business unit heads, including the heads of Consumer/National Mass Markets, DEX, Wholesale, and Global Business" regarding "numerous risks with respect to Qwest's 2001 financial targets." (Bill of Particulars at 6.) Further, the Government identifies "information" Defendant received during the budgeting process that took place between October and December 2000, "in which [D]efendant was further advised of material risks to achieving Qwest's 2001 targets, including Qwest's non-public forecast that non-recurring revenue would decline precipitously in 2001." (*Id.*) Additionally, the Government asserts that by December 2000, Defendant received "key material inside information" through various written memoranda each asserting grave warnings. (*Id.* at 7.) The Government's bill of particulars lists at least ten of these warnings relating to non-public information. (*Id.*) The Government asserts in the bill of particulars that Defendant was also aware of material inside information relating to actual results of Qwest's business operations. (*Id.* at 8.) Further, the Government specifically directs Defendant to the sources which contain examples of the material non-public information upon which the Government relies. (*Id.*) These sources include Qwest's business initiative sheets, business unit review updates, and earnings release binders. (*Id.*) In sum, the Government's bill of particulars lists specific examples of when Defendant obtained the material non-public information, from whom he acquired the information, and the specific product

lines and business units that were underperforming. (*Id.* at 4–9.) Thus, the Government complied with the court's order to identify the material non-public information in paragraph six.

### b.     *Paragraph 6(e) of the Indictment*

Paragraph 6(e) of the indictment states that "there were material undisclosed risks relating specifically to Qwest's recurring and non-recurring revenue streams that put achievement of Qwest's 2001 publicly stated financial targets in jeopardy." (Indictment ¶ 6[e].) With respect to paragraph 6(e), the court ordered the Government to provide a bill of particulars that: (1) identifies the material undisclosed risks referred to in paragraph 6(e) specifically relating to Qwest's recurring and non-recurring revenue streams; and (2) in what way the risks put the financial targets in jeopardy. In response to the court's direction to identify the material undisclosed risks, the Government's bill of particulars states: "Qwest's business was experiencing other difficulties that posed a significant risk to Qwest's ability to achieve its public financial targets. Those difficulties are described in the discovery provided to the defendant. Those difficulties include the risk that by missing 2001's targets, future targets would be jeopardized." (Bill of Particulars at 10.) The Government did not comply with the court's order. The Government did not identify the material undisclosed risks "relating specifically to Qwest's recurring and non-recurring revenue streams." (*See* Repr.'s Tr. at 30; Indictment ¶ 6[e].) It is not sufficient simply to refer defense counsel to discovery. As the court noted in the March 24, 2006 hearing "[a]nyone who is familiar with the boxcar approach to discovery in civil cases knows that dumping vast quantities of documents and information on one's opposing party does

not always elucidate what is going on, so that the [d]efendant can adequately prepare for trial." (Repr.'s Tr. at 28.)

Additionally, the court's order required the Government to "identify in what way the risks put the financial targets in jeopardy." (*Id.* at 30.) The Government's bill of particulars does not comply with the court's order. In response to the court's order, the Government's bill of particulars states "[D]efendant knew that Qwest's business was impacted thus making it less likely that Qwest would achieve its financial targets." (Bill of Particulars at 11.) This is a general statement, similar to that in the indictment, and fails to identify what way the risks themselves put the financial targets in jeopardy. Thus, the Government did not comply with the court's March 24, 2006 order with respect to this issue. The Government is ordered to provide a conforming bill of particulars.

### c. *Paragraph 6(f) of the Indictment*

Paragraph 6(f) of the indictment identifies, as an example of material non-public information, the fact that "the gap between Qwest's publicly stated financial targets and Qwest's recurring revenue was increasing, thus increasing Qwest's reliance on risky and unsustainable one-time transactions." (Indictment ¶ 6[f].) On March 24, 2006, the court ordered the Government to identify in its bill of particulars: (1) the gap or specify the gap; (2) the specific financial targets referred to in this paragraph; (3) the recurring revenue; (4) the increase referred to in paragraph 6(f); and (5) the risky and unsustainable one-time transactions that are referenced in paragraph 6(f). (Repr.'s Tr. at 30–31.) Defendant objects that the Government's bill of particulars does not identify: (1) the recurring revenue referred to in paragraph 6(f); or (2) the

13

risky and unsustainable one-time transactions referenced in the paragraph. (Def.'s Objections to Bill at 6.) I address Defendant's objections below.

First, the Government's bill of particulars adequately identifies the recurring revenue. The Government explains that "recurring revenue was revenue other than what its documents classified as non-recurring. Recurring revenue consisted of revenue that Qwest earned each month during the life of a customer as it rendered services to that customer. Non-recurring revenue consisted almost entirely of IRU and equipment sale revenue." (Bill of Particulars at 11.) Defendant contends the Government's response is "dismissive" and "non-specific." The court disagrees. The court directed the Government to describe the revenue referred to in paragraph 6(f) and the Government complied.

Next, the Government's bill of particulars adequately describes the risky and unsustainable one-time transactions referenced in paragraph 6(f). Specifically, the Government's bill of particulars states "[t]he risky and unsustainable one-time transactions were primarily capacity sales known as IRUs (indefeasible rights of use) and equipment sales." (Bill of Particulars at 12.) Thus, the Government complied with the court's order.

### d. *Paragraph Eight of the Indictment*

Paragraph eight of the indictment states "[Defendant's] stock sales accelerated in January 2001 as he became aware of additional material, non-public information." (Indictment ¶ 8.) The court's March 24, 2006 order directed the Government to "identify the additional material, non-public information that [Defendant] learned of in January of 2001." (Repr.'s Tr. at 31.)

Defendant objects that the Government's bill of particulars "is wholly inadequate and fails to comply with the [c]ourt's order." (Def.'s Objections to Bill at 7.)

The Government's bill of particulars states "[t]he material non-public information alleged in paragraph [eight] is included in the material non-public information alleged in paragraph [six], as more particularly set forth in response number two above." (Bill of Particulars at 12.) This response does not comply with the court's order. The court ordered the Government to identify *additional* material non-public information Defendant learned in January of 2001. It is not sufficient to direct Defendant and the court to material non-public information previously disclosed. Thus, the Government failed to comply with the court's March 24, 2006 order with respect to this issue. The Government is ordered to provide a conforming bill of particulars.

### *4.    Conclusions*

Based on the foregoing it is therefore

ORDERED as follows:

1. Defendant's renewed motion to dismiss the indictment (# 57) is DENIED.

2. Defendant's motion to strike surplusage from the indictment (# 63) is DENIED.

3. Defendant's objections to the Government's bill of particulars (# 58) is GRANTED in part and DENIED in part. The Government is ordered to file a bill of particulars in conformity with this Order and Memorandum of Decision and the court's March 24, 2006 order within ten days of the date of this order.

Dated this 25th day of August, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge