IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Criminal Case No. 05–cr–00545–EWN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. JOSEPH P. NACCHIO,

Defendant.

**TENDERED FOR FILING
MARCH 16, 2007**

Edward W. Nottingham
United States District Judge
by Jamie L. Hodges
Judicial Assistant/Deputy Clerk

**EVIDENTIARY ORDER CONCERNING SO-CALLED BACKDATING EVIDENCE**

*Summary of Relevant Facts and Theories*

    The first and second counts of the Indictment charge insider sales by Defendant on January 2, 2001, and January 3, 2001, respectively. Defendant had acquired all of the shares sold on those dates pursuant to his compensation arrangement with Qwest. Under the arrangement, Defendant was to receive roughly $24,000,000 worth of Qwest stock on January 1, 2001. He decided to sell those shares immediately. The parties dispute when he irrevocably made and communicated that decision to the broker selling his shares, and that dispute has engendered evidentiary issues. The court elects to resolve the dispute before trial because it affects the contents of the opening statements.

Defendant's theory is that things are just as the paper trail makes them appear to be. He maintains that he irrevocably committed to sell the stock on or about November 3, 2000. His instructions were oral (as is permissible under the law, a point which the Government concedes), although he is unclear as to whom the instructions were communicated. He later executed a writing reflecting his oral instructions. The writing was dated November 3, 2000, reflecting the date of his actual oral instructions. Q.E.D. — at least according to Defendant.

The Government responds, in the disparaging and skeptical words of *Saturday Night Live's* Church Lady, "How convenient!" November 3 just happens to fall within a range of dates when Qwest's insider trading window was open — a period during which insiders could sell. More important (at least to the court), it pre-dates Defendant's alleged receipt of information which was allegedly undisclosed, material, and adverse. The Government's theory, therefore, is that the November 3 date is bogus. According to the Government, Defendant did not finally decide to sell (or instruct anyone to sell) the $24 million worth of stock until sometime in mid-December of 2000. He did so only after he had received the allegedly undisclosed, material, adverse information. He then executed back-dated written instructions to conceal the true date of his irrevocable instructions to sell. The Government offers proof that the template for the written instructions was e-mailed from one Gregory Patti, a partner in the firm of O'Melvany and Meyers, to Yash Rana, an attorney employed by Qwest, on or about December 10, 2000. Rana retrieved and renamed the document and finalized it on or about December 13. Defendant thereafter signed the document, which, although necessarily signed on or after December 13, bore the typewritten November 3 date. The Government demonstrates that the signed irrevocable

instructions letter to Salomon Smith Barney dated November 3 is identical to the document finalized by Rana on or about December 13, except for Defendant's manual signature affixed to the former.

*Analysis*

    *1. Relevance — Rule 401*

Defendant advances several reasons for his position that the Government's evidence is irrelevant. First, he maintains that there is nothing demonstrating that the document finalized by Rani on or about December 13 is the one executed by Defendant and dated November 3. The court, having inspected Government Exhibits 100 and 124, finds that Defendant is simply mistaken.

Second, Defendant maintains that the Government's evidence is irrelevant because there is no requirement that the instructions necessary to come within rule10b5-1's safe harbor must be in writing. This, as the Government concedes, is true. Implicit in the Government's theory, however, is the contention that no irrevocable instructions — oral, written, or osmosed — were given by Defendant or anyone on his behalf until mid-December. While the court may not at this preliminary point be aware of the full gamut of the evidence, it appears to include the testimony of Defendant's financial advisor, the testimony of Gregory Patti, the testimony of Yash Rana, and evidence from the hard drive of Rana's computer. It also apparently includes evidence about information which Defendant acquired in mid-December and which might have supplied a motive to sell and to disguise the date of sale. The court finds this to be a sufficient basis for admissibility and for the Government to reference the theory in its opening. *See* Fed. R. Evid. 104.

Defendant's attempt to force acceptance of his factual contention that oral irrevocable instructions were given on or about November 3 and to preclude evidence tending to show the contrary has no legal basis.

Third, according to Defendant, the issue of whether the irrevocable instructions was conveyed within or outside of a trading window when Qwest insiders were permitted to trade stock is irrelevant. The court agrees with this argument. The contents and parameters of the Qwest policy or directive are unclear, and trial time would be required to elucidate them. Whatever they may be, the court finds them irrelevant under rule 401. The court does not see how trading within such a "window" would afford any sort of protection against criminal liability for insider trading; conversely, while trading outside such a window might violate such a policy, it is of marginal relevance on the question of whether it would violate any rule against insider trading. This marginal probative value is outweighed by (1) the undue delay and waste of time consumed in presenting evidence of the "windows," their significance, and the significance of trading within or outside them and (2) the danger that jurors' attention will be focused on the "windows" and not the larger issue of whether Defendant was actually trading on material inside information. While the Government may open by referring to evidence about what information was available to Defendant when he signed the irrevocable instructions in mid-December, it may not refer to trading windows.

Fourth, Defendant recites a list of his evidence allegedly demonstrating that "the growth shares issue is innocent if not exculpatory," whatever that means. The recitation amounts to a summary of proof which would appear to be perfectly proper in Defendant's opening and which

Defendant might endeavor to prove in order to persuade the jury that Defendant intended for months to sell the shares he was to receive on January 1 and that oral instructions were likely to have been conveyed consistent with that intent.  That there are facts which tend to contradict a theory, however, is no reason to exclude those facts supporting the theory.

In summary, the court regards as relevant all evidence tending to show when Defendant finally decided to sell the stock which was finally sold on January 2 and 3, 2001.  At a minimum the Government will need to demonstrate what information Defendant had and when he had it in order to prove that he possessed material inside information when he traded.  To preclude evidence tending to establish that date solely because other evidence might tend to establish an alternate date would impermissibly cabin the Government's proof.

*2. Intrinsic or Extrinsic? — Rule 404(b)*

Defendant next argues that the Government's evidence concerning backdating of the irrevocable instructions is evidence of "other crimes, wrongs, or acts" and cannot come within one of the categories listed in Fed. R. Evid. 404(b).  The Government responds that it is intrinsic evidence necessary to prove the crimes alleged in the first and second counts.  Partly for reasons already recited, the court agrees with the Government on this point.  There is no need to delve into rule 404(b).

The Tenth Circuit has provided the following criteria for courts to use in determining whether evidence is "intrinsic" to charges in an indictment:

> Rule 404(b) . . . "only applies to evidence of acts extrinsic to the crime charged." United States v. Green, 175 F.3d 822, 831 (10th Cir.1999) (internal quotation marks omitted).  "Other act evidence is intrinsic," and

5

> thus not excludable under Rule 404(b), "when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." United States v. Lambert, 995 F.2d 1006, 1007 (10th Cir.1993).

*United States v. Nichols*, 374 F.3d 959, 966 (10th Cir. 2004). The Tenth Circuit has applied one or more of these criteria in a variety of factual contexts, undermining Defendant's suggestion that they may be limited to drug conspiracy cases.

The court finds and concludes that all criteria are met by this evidence. The date on which Defendant made a final, irrevocable decision to sell the shares at issue is a critical part of the proof that, when he made the decision, he had material inside information. Evidence of the backdating is "inextricably intertwined" with this proof because proof of the actual date of the written instructions cannot be separated from the date the instructions bear on their face. It is also part of a single episode, and attempting to excise the proof of backdating would interrupt the narrative and result in a disjointed presentation. Finally, at the very least, proof of the date that the irrevocable decision was made is a necessary preliminary to the actual sales themselves.

*2. Prejudice, Time Wasting, Etc. — Rule 403*

First, Defendant argues that time will be needlessly consumed by a necessary focus on the peripheral issue of whether instructions must be written in order to obtain the benefit of rule 10b5-1. The argument is a red herring. It misapprehends the Government's theory, and it is probably not true. The Government concedes that the instructions need not be written, and it thus appears that a stipulation would avoid any waste of time.

Second, Defendant argues that allowing the Government to proceed with its theory will plunge the court and parties into a time-wasting side trip into the attorney-client privilege. Neither party has briefed the issue to the court's satisfaction, and Defendant has made absolutely no factual showing that there was an attorney-client privilege between him and the corporate attorneys or that the privilege would cover all the documents and testimony which the Government would offer. On this state of the record, the court declines at this time to make a final determination concerning the applicability of the privilege here. Suffice it to say that, based on the court's general understanding and preliminary research, privilege issues are unlikely to deal a fatal blow to the entirety of the Government's proof — certainly not a blow sufficient to preclude reference to the theory in the Government's opening.

Finally, Defendant argues that the heart of the Government's proof — expert testimony concerning the derivation of the document concerning the final instructions to Salomon Smith Barney — will create side issues concerning admissibility of the testimony (including issues of whether disclosure was timely) and force Defendant to hire an expert who will need to testify. The court notes that the expert testimony is the subject of a motion which the court has not decided at this juncture, and nothing in this decision should be read to suggest that the court has implicitly decided that motion. All the court need rule at this point is that evidence will be admitted on the backdating issue and that the Government need not refrain from referring to its backdating theory in its opening. Accordingly, it is

**ORDERED** that the parties shall govern their conduct in accordance with the findings and conclusions stated herein unless and until the court orders otherwise.

Dated this 16th day of March, 2007.

BY THE COURT:

<u>s/ Edward W. Nottingham</u>
EDWARD W. NOTTINGHAM
United States District Judge