IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Criminal Case No. 05–cr–00545–EWN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.  JOSEPH P. NACCHIO,

    Defendant.

---

**ORDER AND MEMORANDUM OF DECISION LIMITING
TESTIMONY OF FINANCIAL ANALYSTS**

---

This matter is before the court on "Defendant Joseph P. Nacchio's Motion to Exclude Testimony by Analysts and Purported Victims," filed March 31, 2007. The court addresses in this order *only* the testimony of the Government's financial analysts' (hereinafter the "Analysts"). Defendant asserts that the Government's Analysts should not be permitted to testify regarding the materiality and non-public nature of the inside information at issue in this case because: (1) the information sought by financial analysts is irrelevant to the question of what information would be material to a reasonable investor; and (2) the Analysts' testimony will almost certainly be in the nature of expert testimony and should, thus, be excluded pursuant to Federal Rule of Criminal Procedure 16(A)(1)(G). The Government contends that its Analysts will offer relevant lay testimony regarding numerous historical facts, such as their personal involvement with Qwest,

1

what information they requested from Qwest, what information was disclosed to them, what information was not disclosed to them, and what information they considered important about Qwest.

This case requires the jury to decide whether, at the time Defendant sold certain stocks, he possessed material, non-public information. A statement or omission is material only if a reasonable investor would consider it important in determining whether to buy or sell stock. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997). Whether the information is material depends on other information already available to the market; unless the statement or omission "'significantly altered the 'total mix' of information' available, it will be considered immaterial." *Id.* (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 [1976]). The Government represents that the Analysts' testimony is relevant to whether certain information at issue in this case was: (1) non-public; and (2) material. Because they raise different concerns, I address the testimony relating to non-public information separately from the testimony relating to materiality.

### a. *Non-Public Information Testimony*

I find the Analysts' proposed testimony regarding the information requested from and received by Qwest is relevant lay-testimony, and is, thus, admissible. First, I address the nature of the testimony. Federal Rules of Evidence 701 and 702 guide the court's analysis. Rule 702 controls expert opinions, and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto

2

in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2006). Rule 701 controls lay opinions, and provides:

If the witness is not testifying as an expert, the witness'[s] testimony in the form of opinions of inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701 (2006). Rule 701(c) came into effect with amendments to the Rules made in 2000 and "ensures that a party will not evade the expert witness disclosure requirements . . . by simply calling an expert witness in the guise of a layperson." Fed. R. Evid. 701 advisory committee's note (2006). Under the amended Rule, "lay testimony 'results from a process of reasoning familiar in every day life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" *Id.* (quoting *State v. Brown*, 836 S.W.2d 530, 549 [1992]).

It is worth noting that Rules 701 and 702 distinguish between expert and lay *testimony*, not expert and lay *witnesses*. *United States v. Caballero*, 277 F.3d 1235, 1247 (10th Cir. 2002). Consequently, it is possible for the same witness to provide both lay and expert testimony in a single case. *Id.*; *see United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (1997) (law enforcement agents gave lay testimony that the defendant was acting suspiciously, but expert opinion rules applied when the agents testified based on experience regarding defendant's use of code words to refer to drug quantities and prices). "[W]itnesses need not testify as experts simply

3

because they are experts — the nature and object of their testimony determines whether the procedural protections of Rule 702 apply." *Caballero*, 277 F.3d at 1247.

Here, the Government proposes to introduce testimony regarding "historical facts" based on the Analysts' personal experience, "such as their personal involvement with Qwest, what specific information they requested from Qwest, what specific information was disclosed to them, what information was not disclosed to them." Mirroring the requirements of Fed. R. Evid. 702, I find this testimony is: (a) "rationally based on the perception of the witness" because it is based on the personal experience of the Analysts; (b) "helpful to a clear understanding of . . . a fact in issue" — namely, whether the information was public or non-public; and (c) "not based on scientific, technical, or other specialized knowledge," because the testimony simply relays the actual experiences of the Analysts. That these Analysts may have the *capacity* to testify based on specialized or technical knowledge does not mean that all of their testimony, particularly when grounded in personal experience, is expert testimony. *Caballero*, 277 F.3d at 1247.

Defendant contends that the Analysts cannot shed light on whether the information at issue was nonpublic, because such a determination must be based "exclusively upon a review of the nature and extent of the disclosures actually made." Information becomes public when either: (1) "disclosed 'to achieve a broad dissemination to the investing public generally and without favoring any special group;'" or (2) "'although known only by a few persons, their trading on it has caused the information to be fully impounded into the price of the particular stock.'" *SEC v. Mayhew*, 121 F.3d 44, 50 (2d Cir. 1997) (quoting *Dirks v. SEC*, 463 U.S. 646, 654 n.12 [1983] and *United States v. Libera*, 989 F.2d 596, 601 [2d Cir. 1993]); *accord United States SEC v.*

4

*Talbot*, 430 F. Supp. 2d 1029, 1042 (D. Cal. 2006). Defendant contends, and the Government disputes, that when information is made available to investors, even if not published in the media, it may be considered "public." Without passing judgement on which party is correct, it is clear to this court that knowing whether the information at issue was provided to financial analysts who closely follow Qwest stock could aid a jury in determining whether that information was "public." Certainly, if an Analyst requested information from Qwest and was rebuffed, then that testimony would tend to support the conclusion that such information was nonpublic. Further, if Defendant's understanding of the legal meaning of "public" is correct, any testimony that certain information *was* disseminated to the Analysts would support the conclusion that such information was public. Based on the foregoing, I find Qwest's disclosures, or lack thereof, to the Analysts is relevant to whether or not the information at issue was "public."

### b. *Testimony Relating to Materiality*

Defendant argues that even if an individual's opinion regarding materiality could be relevant, a financial analyst is not a "reasonable investor," and thus his or her testimony is irrelevant. The Government counters that: (1) it has a right to call actual people to help the jury determine what a reasonable investor would do; (2) the reasonable investor standard cannot be applied in a vacuum, but requires assessment of the factual circumstances, which can include facts known about the stock to market professionals; and (3) that professional analysts have routinely testified in cases involving securities fraud as to materiality of information. Further, the Government explains that it "does not anticipate any testimony on such broad matters of opinion as 'what is material in the marketplace.' Rather, [the Analysts] are expected to recount their

5

personal involvement with Qwest . . . . All of this testimony will be based on their personal knowledge."

I find that the information a financial analyst personally finds important is irrelevant to whether that information would be important to a reasonable investor in deciding whether to buy or sell stock. Common sense alone tells the court that a financial analyst is *not* akin to a reasonable investor. "Particular information may be of interest to a professional securities trader because of his or her professional interest in the stock market, but it does not necessarily follow that because a professional trader is interested in particular information that the information is material when judged through the eyes of a reasonable investor." *United States v. Victor Teicher & Co., L.P.*, No. 88 cr. 796 (CSH), 1990 U.S. Dist. LEXIS 2620, at *3 n.3 (S.D.N.Y. Mar. 9, 1990); *cf. Va. Bankshares v. Sandberg*, 501 U.S. 1083, 1097–98 (1991) (noting that a financial analyst's ability to identify an inconsistency in a company's public disclosures is not sufficient to make the inconsistency immaterial; "[o]nly when the inconsistency would exhaust the misleading conclusion's capacity to influence the *reasonable shareholder* would [an] action fail on the element of materiality") (emphasis added); *United States v. Morris*, 80 F.3d 1151, 1167–68 (7th Cir. 1996) (same). In fact, financial analysts are arguably hypersensitive to information disseminated about the market. *Cf. United States v. Hanna*, 293 F.3d 1080, (9th Cir. 2002) (In a case requiring the jury to determine whether a reasonable person would forsee his communication to be a threat on the President's life, the court found a law enforcement officer "particularly unqualified to comment on what a 'reasonable person' would have forseen. Because of their extensive training, experience and expertise, law enforcement officers and especially Secret

Service agents, would see potential dangers to the President which a reasonable person receiving [the defendant's] documents might not notice or would consider innocuous."); *accord United States v. Romo*, 413 F.3d 1044, 1050 (9th Cir. 2005). Undoubtedly, financial analysts encounter much information that they consider important but that a reasonable investor would not. In fact, it is precisely a financial analyst's job to consider information that a reasonable investor may overlook. "In this case, using highly trained [Analysts] to determine what a reasonable [investor would consider important would be] like using a bloodhound to determine whether the average person would pick up a scent." *Hanna*, 239 F.3d at 1086. Accordingly, I find the Analysts' testimony regarding what information about Qwest they would have considered "important" is irrelevant.

The Government cites several cases purporting to show that financial analysts "routinely testify" regarding the materiality of non-public information. I find all of the cited cases are inapposite because only one even arguably addresses a financial analyst's testimony regarding materiality. (*See, e.g.*, *United States v. Stewart*, 433 F.3d 273, 281 (2d cir. 2006) (financial analyst testified on the volume and price movements of certain stock); *United States v. O'Hagan*, 139 F.3d 641, 648 (8th Cir. 1998) (financial securities analysts testified regarding the degree of significance the market attributed to certain media reports). That case, *Elkind v. Kigget & Meyers, Inc.*, relies on a financial analyst's testimony to determine that the defendant lacked the scienter to tip because he did not consider the tipped information to be material. 635 F.2d 156, 168 (2d cir. 1980). The court, however, never relies on the analyst's testimony to determine what

7

a "reasonable investor" would have considered important in deciding whether to buy or sell stock. (*Id.*) Thus, this case, too, gives little guidance to the court.

Nonetheless, this court has endeavored to uncover other cases in which courts have relied on financial analysts to assist the jury in understanding what would be important to a reasonable investor in deciding whether to buy or sell stock. In all of those cases, the financial analysts were qualified as experts and testified not based on their personal experience, but on their *expert opinion* as to what reasonable investors would have considered material. *See e.g.*, *R2 Invs., LDC v. World Access, Inc. (In re World Access, Inc.)*, 301 B.R. 217, 289 (Bankr. D. Ill. 2003); *Weinberger v. Kwiker*, No. CV 85–6995 PAR (Bx), 1990 U.S. Dist. LEXIS 14085, at *10 (D. Cal. 1990); *Steinberg v. Carey*, 470 F. Supp. 471, 476–77 (S.D.N.Y. 1979). The Government does not, and cannot, deny that it has failed to provide notice of such expert testimony as required by Federal Rule of Criminal Procedure 16(a)(1)(G), and, thus, is prohibited from having the Analysts testify as experts.

Even if I were to find the Analysts' lay testimony relevant, I would exclude it on the basis of being prejudicial and likely to confuse the issues under Federal Rule of Evidence 403. The testimony would pose a significant danger of misleading the jury into believing that it should judge materiality from the perspective of a highly trained financial analyst rather than from the perspective of a reasonable investor. *Hanna*, 2389 F.3d at 1086–87 (finding law enforcement testimony that he would have perceived the document at issue as a threat to the President "posed a significant danger of misleading the jury into believing that it should judge [the defendant's] letters from the perspective of a highly trained Secret Service agent instead of from the

8

perspective of an average, reasonable person"). This, in turn, would pose a danger of prejudice to Defendant, because the jurors may erroneously conclude "that they were not the best qualified to assess the [materiality of the information at issue], that they should second guess their own judgment, and that they should defer to the Government's [Analysts]." *Id.* at 1087.

2. *Conclusion*

Based on the foregoing, it is therefore ORDERED that Defendant's motion to exclude testimony (#288) is GRANTED to the limited extent noted in this order

Dated this 26th day of March, 2007

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge