IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Criminal Case No. 05–cr–00545–EWN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. JOSEPH P. NACCHIO,

      Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

      This is a securities fraud case.  A jury has convicted Defendant Joseph P. Nacchio of nineteen counts of insider trading.  This matter is now before the court on "United States' Motion for Entry of Money Judgment," filed April 26, 2007.

## FACTS

### 1.    *Procedural Background*

      On December 20, 2005, a federal grand jury returned an indictment alleging forty-two counts of insider trading against Defendant.  (Indictment at 1 [filed Dec. 20, 2005] [hereinafter "Indictment"].)  The indictment also sought criminal forfeiture under statutes enacted by the Civil Asset Forfeiture Reform Act ("CAFRA").  (*Id.* at 6.)  A trial was held, and on April 19, 2007, the jury found Defendant guilty on counts twenty-four through forty-two of the indictment.  (Jury

Verdict [filed Apr. 19, 2007].)  Defendant elected to forgo a jury determination of forfeiture.

(4/19/07 Trial Min. [filed Apr. 19, 2007].)

On April 26, 2007, the Government filed a motion for entry of money judgment.  (United

States' Mot. for Entry of Money J. [filed Apr. 26, 2007] [hereinafter "Gov't Br."].)  Therein, the

Government argued that Defendant must forfeit the gross proceeds of the sales for which he was

found guilty.  (*Id.*)  The Government calculated the gross proceeds to be $52,007,545.47.  (*Id.*)

On July 6, 2007, Defendant filed a response brief.  (Resp. to Mot. of the United States for Entry

of Money J. [filed July 6, 2007] [hereinafter "Def.'s Resp."].)  On July 17, 2007, the Government

filed a reply brief.  (United States' Reply in Supp. of Mot. for Money J. [filed July 17, 2007]

[hereinafter "Gov't Reply"].)

2.      *Evidence Presented*

With respect to each act of insider trading of which Defendant was convicted, the

Government's evidence reveals that the following series of transactions transpired: (1) Defendant

made a command to exercise a specific number of options; (2) his broker "short sold" that same

number of shares and forwarded the proceeds to Qwest, less a commission and fees; (3) Qwest

issued a corresponding number of shares, which were transferred to the broker; (4) Qwest

deducted both the exercise cost ($5.50 per share) and taxes from the proceeds of the sale and then

deposited the balance in Defendant's account.  (Def.'s Resp. to the Presentence Report, Ex. 1

[Trial Exhibits: Correspondence Between Broker and Qwest] [undocketed].)

Defendant does not contest the accuracy of the Government's calculation of the sums of

money relating to this dispute: (1) the gross proceeds of the stock sales, totaling $52,007,545.47;

(2) the cost of exercising the options, totaling $7,315,000.00; (3) the brokerage commissions and fees paid, totaling $60,081.09; and (4) the taxes paid, totaling $16,078,147.81.  (*See* Def.'s Resp. at 2, 5; Gov't Br., Ex. 1 [Chamberlin Dec.], Attach. A [Summ. Chart], Attach. B [Trial Exhibits: Trade Confirmation Docs.]; Gov't Reply, Ex. A [2d Summ. Chart].)

## ANALYSIS

### 1.    *Legal Background*

Federal Rule of Criminal Procedure 32.2(b)(1) provides that after a jury verdict on a "count of an indictment regarding which a forfeiture is sought," if "the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay" under the applicable forfeiture statute.  Fed. R. Crim. P. 32.2(b)(1) (2007). "Once the defendant is convicted of an offense on proof beyond a reasonable doubt, the government is only required to establish the forfeitability of the property subject to criminal forfeiture as a result of that offense by a preponderance of the evidence."  *United States v. Schlesinger*, 396 F. Supp. 2d 267, 271 (E.D.N.Y. 2005) (citing *Libretti v. United States*, 516 U.S. 29, 49 [1995]; further citations omitted); *United States v. Keene*, 341 F.3d 78, 85–86 (1st Cir. 2001) (explaining that because forfeiture is an aspect of punishment imposed following conviction, the applicable standard of proof is preponderance of the evidence); *see also* 18 U.S.C.A. § 983(c)(1) (West 2007) (providing that "[i]n a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property . . . the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture.").

*3.*      *Analysis*

The Government argues that Defendant must forfeit the gross proceeds of the illegal sales for which he was convicted, $52,007,545.47.  (Gov't Br. at 4–9.)  While Defendant's response raises a variety of issues, they are all resolved by the answer to one fundamental question: What amount, if any, is deductible from the gross proceeds of the sales for which Defendant was found guilty?  (*See* Def.'s Resp.)  I answer this question below.

*a.*      *Net Profits versus Gross Proceeds*

Defendant argues that because broker commissions, taxes, and the exercise price were deducted from the gross proceeds of the illegally sold shares *before* the net profits were deposited into his personal accounts, he never "obtained" or "acquired" any of those deducted sums.  (*Id.* at 5–8.)  Consequently, contends Defendant, those deducted sums are not forfeitable "proceeds" under CAFRA.  (*Id.*)

Congress enacted CAFRA in 2000.  Pub. L. No. 106-185, 114 Stat. 202 (2000).  As amended by CAFRA, section 981 of title 18 of the United States Code subjects to forfeiture a wide range of crime-related property, including "[a]ny property, real or personal, which constitutes or is derived from *proceeds* traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956[c][7] of this title) . . . ."  18 U.S.C. § 981(a)(1)(C) (emphasis added); *see* Pub. L. No. 106-185, § 20, 114 Stat. 202, 224 (2000).  A pinball journey through the federal code leads to the conclusion that "specified unlawful activity" includes the crime of insider trading.  *See* 18 U.S.C.A. § 1956(c)(7)(A) (defining "specified unlawful activity" as "any act or activity constituting an offense listed in section 1961(1) of this title . . . ."); *id.* §

4

1961(1)(D) (listing "any offense involving . . . fraud in the sale of securities"); *see also* 15

U.S.C.A. 78j (West 2007) *and* 17 C.F.R. §§ 10b–5, 10b5–1 (2007) (revealing that insider trading

constitutes fraud in the sale of securities).

 CAFRA also added subsection (c) to section 2461 of title 28 of the United States Code.

Pub. L. No. 106-185, § 16, 114 Stat. 202, 221 (2000).  Effective March 6, 2006, the USA

PATRIOT Improvement and Reauthorization Act of 2005 again amended this section.  Pub. L.

No. 109-177, § 410, 120 Stat. 191, 246 (2005).  In relevant part, the statute now provides that if

a defendant is convicted of "a violation of an Act of Congress for which the civil and criminal

forfeiture of property is authorized," then "the court shall order the forfeiture of the property as a

part of the sentence in the criminal case . . . ."  28 U.S.C.A. § 2461(c) (West 2007); *see*

*Schlesinger*, 396 F. Supp. 2d at 276 ("[T]he legislative history makes it clear that Congress

intended [section] 2461[c] to authorize criminal forfeiture . . . as long as there is a corresponding

civil forfeiture provision.").

 Significantly, CAFRA also amended section 981 of title 18 of the United States Code by

adding a definition of the term "proceeds."  Pub. L. No. 106-185, § 20, 114 Stat. 202, 224

(2000).  In pertinent part, section 981(a)(2) defines "proceeds" as such:

> (A) *In cases involving* illegal goods, illegal services, *unlawful activities*, and
> telemarketing and health care fraud schemes, *the term "proceeds" means property*
> *of any kind obtained directly or indirectly, as the result of the commission of the*
> *offense giving rise to forfeiture, and any property traceable thereto, and is not*
> *limited to the net gain or profit realized from the offense.*
> (B) In cases involving lawful goods or lawful services that are sold or provided in
> an illegal manner, the term "proceeds" means the amount of money acquired
> through the illegal transactions resulting in the forfeiture, less the direct costs
> incurred in providing the goods or services.  The claimant shall have the burden of

> proof with respect to the issue of direct costs.  The direct costs shall not include
> any part of the overhead expenses of the entity providing the goods or services, or
> any part of the income taxes paid by the entity.

18 U.S.C.A. § 981(a)(2)(A), (B) (emphases added).

As noted above, with respect to the taxes, commissions, and the exercise price paid for the shares he sold illegally, Defendant argues that he never "obtained" or "acquired" those monies under either section 981(a)(2)(A) or (B) because such monies were deducted from the gross proceeds of the illegal sales before the remaining net proceeds were deposited into his personal accounts.  (Def.'s Resp. at 5–8.)  With respect to both subsections (A) and (B), Defendant thus argues that "[m]onies not <u>obtained</u> [or acquired] are not proceeds at all."  (*Id.* at 6 [emphasis in original].)  With respect to subsection (B), Defendant further argues that: (1) the deducted sums constitute "direct costs," which may be subtracted from the amount he must forfeit under subsection (B); and (2) "[s]ince trading in securities is generally a lawful activity, the offense of trading based on inside information clearly involves 'lawful goods . . . sold in an illegal manner.'" (*Id.* at 6–7 [citing 18 U.S.C.A. § 981(a)(2)(B)].)

I find that subsection (B) does not apply in this case.  The court need not cite any authority to support this elementary observation: a security is not a good, it is a commodity.  If any doubt remains that Defendant is overreaching to place himself beneath the umbrella of subsection (B), an opinion from the Southern District of New York squarely confirms that the instant case falls exclusively under subsection (A).  In *United States v. All Funds on Deposit in United Bank of Switzerland*, the court stated:

> "Unlawful activities" is a term of art in CAFRA, at least so far as it pertains to that "specified unlawful activity" expressly identified in [section] 981(a)(1)(C) as referring to those unlawful activities defined in 18 U.S.C. § 1956(c)(7) — a category distinguished separately from the numerous other federal criminal violations referenced elsewhere in [section] 981(a)(1)(C).  With respect to these unlawful activities . . ., *the definition of the forfeitable proceeds is solely provided by [section] 981(a)(2)(A)*, and not in any respect by [section] 981(a)(2)(B), as shown by the fact that, whereas the latter refers to cases involving "lawful goods or lawful services," the former applies to cases involving "illegal goods, illegal services, [or] unlawful activities . . . ."

188 F. Supp. 2d 407, 410 (S.D.N.Y. 2002) (emphasis added; second ellipsis in original).  In the instant case, Defendant was convicted of the "specific unlawful activity" of securities fraud.  *See* 18 U.S.C.A. §§ 981(a)(1)(C), 1956(c)(7)(A), 1961(1)(D).  Thus, under the well-reasoned opinion from the Southern District of New York, the only definition of forfeitable proceeds that matters here is the one in section 981(a)(2)(A).  Accordingly, Defendant's arguments concerning "direct costs" are irrelevant: while subsection (B)'s definition of forfeitable proceeds permits the subtraction of "direct costs," subsection (A)'s definition contains no such language.  *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same [a]ct, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation and quotation marks omitted).

Thus, the court is left with Defendant's argument that "[m]onies not <u>obtained</u> are not proceeds at all."  (Def.'s Resp. at 6 [emphasis in original].)  Tellingly, this argument is unadorned by a citation.  (*See id.*)  Moreover, as explained immediately below, the argument elevates the

form in which the proceeds of Defendant's unlawful sales were distributed over the substance of

the entire transaction.

Subsection (A) unequivocally provides that forfeitable proceeds include those obtained

both "directly" *and* "indirectly."  18 U.S.C.A. § 981(a)(2)(A).  As the Government aptly explains,

"[a]s a result of the illegal sales, Defendant obtained — indirectly, through a payment to his

broker — the gross proceeds of approximately [fifty-two] million [dollars].  The fact that his

*direct* recovery was less that this initial amount (due to payments made to others) is immaterial."

(Gov't Reply at 13.)  Defendant's stock options were exercised at his behest by agents acting on

his behalf.  That before depositing the proceeds of the sale in Defendant's account his agents

subtracted funds to pay (1) the exercise price, (2) state and federal taxes, and (3) brokerage

commissions and fees does not change the fact that at the moment the shares were illegally sold,

Defendant's gross proceeds totaled *exactly* $52,007,545.47.  Under the plain language of

CAFRA, that entire sum is forfeitable because forfeitable "proceeds" are "*not* limited to the net

gain or profit realized from the offense."  18 U.S.C.A. § 981(a)(2)(A) (emphasis added).  This

comports with the plain meaning of the words "proceeds" and "profit:"

> Webster's preferred definition of "proceeds" reads "what is produced by or
> derived from something . . . by way of total revenue: the total amount brought in."
> *Webster's Third New International Dictionary* 1807 (1961); *see also Black's Law
> Dictionary* 1204 (6th ed. 1990) (defining proceeds as "the sum, amount, or value
> of property sold or converted into money or into other property").  "Profit," by
> contrast, is defined as "the excess of returns over expenditure in a transaction or
> series of transactions," *Webster's Third New International Dictionary* 1811, or
> "the gross proceeds of a business transaction less the costs of the transaction,"
> *Black's Law Dictionary* 1211.

*United States v. McHan*, 101 F.3d 1027, 1041 (4th Cir. 1996)

-8-

In *United States v. Keeling*, a case arising under Drug Abuse Prevention and Control Act's ("DAPCA") forfeiture provision, the Tenth Circuit summarily rejected an argument practically identical to Defendant's.  235 F.3d 533, 537 (10th Cir. 2000).  This was so even though DAPCA's forfeiture statute leaves "proceeds" undefined and, thus, unlike CAFRA, contains no provision stating that forfeitable proceeds are "not limited to the net gain or profit realized from the offense."[1]  *See* 21 U.S.C.A § 853(a), (b) (West 2007).  In *Keeling*, the defendant argued "that he should only be responsible in forfeiture for the amount of profits rather than the gross proceeds of his narcotics enterprise [because] the majority of the gross proceeds went to his supplier."  235 F.3d at 537.  Rejecting this argument as "utterly without merit," the Tenth Circuit quoted *McHan*:

> Were we to read proceeds in [section] 853 to mean only profits, . . . we would create perverse incentives for criminals to employ complicated accounting measures to shelter the profits of their illegal enterprises.  The purpose of forfeiture is to remove property facilitating crime or property produced by crime — all of which is tainted by the illegal activity.

---

[1]The court has two minor digressions.  First, the fact that CAFRA tracks caselaw that preceded it strongly suggests that Congress intended the definition of "proceeds" in the two statutes to be the same.  Second, noting 28 U.S.C.A. § 2461(c)'s statement that the procedures of 21 U.S.C.A. § 853 apply in criminal forfeiture cases, Defendant contends that the substantive provisions of DAPCA "are not applicable here."  (Def.'s Resp. at 4 n.2, 6); *see* 28 U.S.C.A. § 2461(c) (specifically incorporating the procedures of 18 U.S.C.A. § 853); *see also* 18 U.S.C.A. § 853(c)–(q) (establishing various procedural processes for the disposal of property subject to forfeiture, such as the rights of third-party transferees to a hearing).  While the DAPCA's substantive provisions may not *govern* this case, the Tenth Circuit's *Keeling* opinion analyzes forfeiture under a similarly worded, similarly interpreted statute and, thus, is highly persuasive authority — particularly because the *Keeling* defendant's argument is practically identical to the one raised here by Defendant.

*Id.* (quoting *McHan*, 101 F.3d at 1042).  Thus, the *Keeling* court concluded: "for purposes of [section] 853, 'proceeds' contemplates gross proceeds and not merely profits."  *Id.*

Notwithstanding Defendant's affectations to the contrary, the great weight of authority substantiates *Keeling* and *McHan*'s conclusion.  *See, e.g.*, *United States v. Vampire Nation*, 451 F.3d 189, 201–02 (3d Cir. 2006) (holding, under DAPCA, "that *in personam* forfeiture judgment may be entered for the full amount of the criminal proceeds"); *United States v. Huber*, 404 F.3d 1047, 1058–59 (8th Cir. 2005) (finding, under CAFRA, that legitimate expenses incurred in acquiring forfeitable funds are not to be deducted from the amount to be forfeited); *United States v. Boulware*, 384 F.3d 794, 813 (9th Cir. 2004) (finding, under CAFRA, that a defendant must forfeit gross amount of fraudulently obtained loan without any set-off for amount already repaid).[2]

Thus, *Keeling* and section 981(a)(2)(A) march in lockstep.  *Keeling*'s conclusion that "'proceeds' contemplates gross proceeds and not merely profits" matches section 981's proviso stating forfeitable proceeds are "not limited to the net gain or profit realized from the offense." *Keeling*, 235 F.3d at 537; 18 U.S.C.A. § 981(a)(2)(A).

_____

[2]Defendant cites to a line of Seventh Circuit cases concerning the Racketeer Influenced and Corrupt Organizations ("RICO") Act's forfeiture provisions for the proposition that "[t]he [RICO] statute is designed to force criminals to disgorge their ill-gotten gains[;] the proceeds to which the statute refers are net, not gross, revenues — profits, not sales, for only the former are gains."  (Def.'s Resp. at 7 [quoting *United States v. Masters*, 924 F.2d 1362, 1369–70 (7th Cir. 1991)].)  I reject these cases here because: (1) they do not arise under CAFRA section 981(a)(2)(A), which excludes subtraction of "direct costs;" and (2) they are inconsistent with the logic of *Keeling*.  Defendant also cites to *United States v. Lizza Industries, Inc.*, 775 F.2d 492 (2d Cir. 1985), but as later courts have pointed out, the Second Circuit did not decide in *Lizza* that direct costs should be deducted from proceeds.  *See United States v. Ofchinick*, 883 F.2d 1172, 1182 (3d Cir. 1989) ("*Lizza* [merely] held that th[e] district court had not erred in refusing to deduct overhead expenses and taxes paid on the racketeering profits.").

Defendant seeks to distinguish *Keeling* based on his understanding that the defendant in that case actually received the proceeds of his illegal activity before paying his drug supplier, whereas Defendant here never literally *possessed* those proceeds used to pay his taxes, brokerage fees, and the exercise price.  (*See* Def.'s Resp. at 8.)  This is a distinction without difference. That Defendant never personally held the proceeds of his illegal sales does not mean that he did not "obtain" them for the purposes of section 981(a)(2)(A).  To hold otherwise would be to fall into the trap expressly warned against in *McHan* and *Keeling*, perversely incentivizing criminals "'to employ complicated accounting measures to shelter the profits of their illegal enterprises.'" *Keeling*, 235 F.3d at 537 (quoting *McHan*, 101 F.3d at 1042).  Thus, I reject the literalistic straightjacket Defendant would place on the term "obtained."

The Government provides a lucid counterfactual: "If [Defendant] had paid Qwest [to exercise his options prior to selling his shares], then he would not have had to pay Qwest back, and the gross sale proceeds would have all gone to him."  (Gov't Reply at 14.)  The precise mechanics of Defendant's exercising of his options and the sale of his shares cannot defeat the underlying substance of the transaction: he sold $52,007,545.47 in shares and received the benefit of every penny thereof.  Whether he paid the exercise price, taxes, or brokerage commissions before or after the proceeds of the sale were deposited in his personal account does not negate the substance of the transaction.  (*Cf.* Def.'s Resp. at 5–8.)  Nor does the fact that Qwest or Defendant's broker — rather than Defendant himself — withdrew proceeds to pay those debts. (*Cf. id.*)  The debts paid were Defendant's, and they were paid on his behalf.  While payment of such debts may rightly factor into Defendant's *personal* calculation of his net gains, they may not

-11-

be deducted from the forfeiture required under CAFRA.  *See* 18 U.S.C.A. § 981(a)(2)(A) (stating

forfeiture "is not limited to the net gain or profit realized from the offense").  To hold otherwise

would be to allow a criminal to launder the proceeds of his crimes by paying his debts.

Moreover, such a holding would fly in the face of the punitive and deterrent goals of

criminal forfeiture law.  *See, e.g.*, *Libretti*, 516 U.S. at 39 ("Congress conceived of forfeiture as

punishment for the commission of various drug and racketeering crimes."); *United States v.*

*Bajakajian*, 524 U.S. 321, 329 (1998) (rejecting the government's argument that forfeiture serves

a remedial purpose and emphasizing that deterrence is a quintessential goal of punishment);

*Keeling*, 235 F.3d at 537 ("'The purpose of forfeiture is to remove property facilitating crime or

property produced by crime — all of which is tainted by the illegal activity.'") (quoting *McHan*,

101 F.3d at 1042).

       *b.*       *Disgorgement of Gains*

Defendant argues that before the enactment of CAFRA, "criminal law did not even apply

to securities fraud cases."  (Def.'s Resp. at 9.)  Thus, he contends, "much of the law dealing with

forfeiture in other contexts" is inapplicable, suggesting that a full forfeiture of the proceeds of his

illegal sales is unreasonably disconnected from the harm caused by his misconduct.  (*See id.* at

9–10.)  Accordingly, urges Defendant, this court should adopt the approach of *civil* forfeiture

cases brought under 18 U.S.C.A. § 981, which, due to their "civil and remedial nature," merely

require those who are found to have committed securities fraud in a civil trial to disgorge their

"ill-gotten gains."  (*Id.* at 10–11.)  Relying on the report of his hired expert, Defendant finally

contends that, of the proceeds from the sales for which he was convicted, the "ill-gotten gains"

attributable to his use of material inside information amount to less than two million forfeitable dollars. (*Id.* at 12.)

Defendant would have this court substitute his judgment for that of Congress. However, as discussed above, CAFRA unambiguously provides that those convicted of securities fraud must forfeit all "proceeds" of their crimes. *See* 18 U.S.C. §§ 981(a)(1)(C), (a)(2)(A), 1956(c)(7)(A), 1961(1)(D); *United Bank of Switzerland*, 188 F. Supp. 2d at 410. As the Supreme Court has said "time and again," "courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations and internal quotation marks omitted).

Furthermore, section 981(a)(2)(A) forfeiture applies to proceeds derived from other kinds of fraud, such as health care fraud, telemarketing fraud, mail fraud, wire fraud, bank fraud, and certain classes of embezzlement. *See* 18 U.S.C. §§ 981(a)(2)(A), 1956(c)(7)(A), 1961(1)(B). Thus, as the Government aptly states, "[t]here is no basis for ignoring Congress's decision to punish [all] such offenders by requiring forfeiture of gross proceeds." (Gov't Reply at 21.) Additionally, Defendant has not cited — and this court has failed to uncover — any authority supporting his implicit contention that this court has the discretion to reduce the "unreasonable" (Defendant's word) forfeiture mandated by CAFRA. (*See* Def.'s Resp. at 10.)

Finally, it should go without saying that unlike civil forfeiture, which Defendant rightly characterizes as both "civil and remedial" in nature, criminal forfeiture is neither civil nor remedial. *Bajakajian*, 524 U.S. at 329. Instead, it is hawkishly focused on punishment and

deterrence.  *See id.*; *Libretti*, 516 U.S. at 39; *Keeling*, 235 F.3d at 537.  While Defendant may

believe, rightly or wrongly, that insider trading is a lesser evil than drug trafficking, (*see* Def.'s

Resp. at 9), criminal forfeiture law does not make such distinctions — and this court is powerless

to rewrite the law to suit Defendant's beliefs.

**5.      Conclusion**

Based on the foregoing it is therefore ORDERED that:

1.      The GOVERNMENT's motion (#412) is GRANTED.

2.      Defendant shall forfeit to the United States the sum of $52,007,545.47 within

fifteen days of the date of this order.

3.      This order shall become final as to Defendant at the time of sentencing, and shall

be made part of the sentence and included in the judgment.


Dated this 27th day of July, 2007

                                        BY THE COURT:


                                        s/ Edward W. Nottingham
                                        EDWARD W. NOTTINGHAM
                                        Chief United States District Judge