IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Criminal Action No. 05-cr-00545-MSK

UNITED STATES OF AMERICA,

       Plaintiff,

v.

JOSEPH P. NACCHIO,

       Defendant.

## ORDER GRANTING MOTION FOR RECONSIDERATION AND DENYING REQUEST FOR BAIL

**THIS MATTER** comes before the Court on the Defendant's Emergency Motion to Reconsider his Emergency Motion for Continued Release Pending Resolution of a Petition for Certiorari **(#541)**, the Government's Response **(#543)**, the Defendant's Reply in Support **(#546)**, and the Defendant's Supplement **(#556)** (collectively referred to as the "Motion").

On April 19, 2007, the Defendant was convicted on 19 counts of securities fraud for insider stock trades he made in the first half of 2001. On July 27, 2007, he was sentenced to concurrent imprisonment terms of seventy-two months on each count of conviction. The Defendant appealed his conviction to the Tenth Circuit Court of Appeals. The Circuit Court granted Defendant's request for bail[1] with the expectation that the appeal would be expedited. A three-judge panel unanimously determined all but one of the issues pertaining to the Defendant's

---

[1] It authorized his release conditioned on the $2 million unsecured bond he had posted in the trial court.

conviction.[2] On a single issue - exclusion of expert testimony - the judges disagreed. The

majority found that the trial court had abused its discretion in excluding the evidence. It

reversed the Defendant's conviction and ordered a new trial. The Government sought review by

the entire Circuit Court. Sitting *en banc*, the Circuit Court reconsidered only the expert

testimony issue. In a divided decision, it reversed the panel decision and affirmed the

Defendant's conviction. It also exonerated the Defendant's bond and lifted the stay of his

sentence.

This Court[3] then entered an Order directing the Defendant to report to the institution

designated by the Bureau of Prisons to begin serving his sentence. In response, the Defendant

filed an emergency motion with the Circuit Court. He announced that he would request review

by the United States Supreme Court, and pending determination of his forthcoming Petition for

Certiorari, he requested to remain free on bail pursuant to the Bail Reform Act of 1984, 18

U.S.C. § 3143(b). The Tenth Circuit denied his motion, directing him to file it with this Court.

The Defendant immediately renewed his motion for bail pending appeal in this Court.

His motion was denied as premature because he had not yet initiated an appeal with the United

States Supreme Court by filing a Petition for Certiorari.[4] That deficiency was cured on March

---

[2] It reserved determination of two issues pertaining to the Defendant's sentence - the amount to be forfeited and application of a sentencing enhancement pursuant to the Federal Sentencing Guidelines.

[3] Due to the resignation of the judge who had presided over the matter through sentencing, this case was reassigned to the undersigned on February 25, 2009.

[4] The pertinent provision of the Bail Reform Act, 18 U.S.C. § 3143(b), states that the request for bail pending appeal can be granted only after the petition for certiorari is filed. This makes sense. In order to obtain bail pending appeal, a defendant must show that he has raised substantial question of law or fact that would entitle him to a reversal, new trial or abrogation of his sentence. If the appeal is to the United States Supreme Court, such questions necessarily

20, 2009.[5]

The issue that is now before this Court is whether the Defendant is entitled to bail pursuant to 18 U.S.C. § 3143(b) pending the Supreme Court's determination of his Petition.

## I.      JURISDICTION

In resolving this issue, the Court exercises jurisdiction pursuant to 18 U.S.C. §§ 3041 and 3143. *United States v. Snyder*, 946 F.2d 1125, 1125 (5th Cir. 1991).

## II.     MATTERS NOT DETERMINED

The issue presented is narrow. As a consequence, in issuing this Order, the Court does not consider whether the Defendant's conviction was proper, whether the Tenth Circuit's decision to affirm it was correct, whether the United States Supreme Court will grant certiorari to consider the Defendant's appeal,[6] or what the likely outcome of such appeal might be. Similarly, despite public interest in many aspects of this case, for determination of this issue it is neither necessary, nor appropriate, to consider the identities, characteristics, or personalities of the Defendant, any victim(s) of the offenses, the witness who offered the expert testimony, or the

---

must be raised in a petition for certiorari. Because any reversal, new trial or abrogation of a defendant's sentence would be limited to questions raised in the petition, the petition must be filed so that its contents can be considered in conjunction with a request for bail.

[5] For ease of reference, a copy of the Defendant's Petition for Certiorari filed with the United States Supreme Court can be found at Docket **#556**.

[6] The Government has argued that this Court should determine the likelihood that the Supreme Court will grant the Defendant's Petition for Certiorari. This is based upon two cases in which a Justice of the Supreme Court was asked to determine a motion for bail pending appeal. See: *McGee v. Alaska*, 463 U.S. 1339 (1983) and *Julian v. United States*, 463 U.S. 1308 (1983). Both of these cases arose before the enactment of the Bail Reform Act. Although each Justice opined as to how many of the other Justices might support granting certiorari, this does not set the standard for review under the Bail Reform Act, and furthermore would require inappropriate speculation by this Court.

trial judge who excluded it.

## III.   PERTINENT HISTORY

### A.    The Appeal of Defendant's Conviction to the Tenth Circuit Court of Appeals

In the Tenth Circuit Court of Appeals, the Defendant argued that his conviction should be reversed. The three-judge panel unanimously held that the jury had been properly instructed and that the evidence was sufficient to convict the Defendant. *United States v. Nacchio*, 519 F.3d 1140, 1157-69 (10th Cir. 2008). However, the panel was divided as to whether the trial court had abused its discretion in excluding expert testimony. The majority found that the trial court had abused its discretion by requiring the Defendant to disclose more information than was mandated by Federal Rule of Criminal Procedure 16 and by excluding the proffered expert testimony without holding an evidentiary hearing. *Id.* at 1149-56. The dissent found no abuse of discretion because the Defendant had been given ample opportunity to disclose information necessary to meet the foundational requirements for admission of expert testimony pursuant to Federal Rule of Evidence 702, but had failed to satisfy those requirements. *Id.* at 1170-76 (Holmes, J. dissenting).

Sitting *en banc,* the Tenth Circuit reconsidered only the panel's determination with regard to the exclusion of expert testimony. In its February 25, 2009 decision, a divided Court reversed the panel and affirmed the Defendant's conviction. *United States v. Nacchio*, 555 F.3d 1234, 1259 (10th Cir. 2009). The split in the decision hinged on differing interpretations of the trial court record. The majority found no abuse of discretion by the trial court either in the process it used to determine the admissibility of the Defendant's expert testimony or in its decision to exclude it. *Id.* at 1241-42. It found that the process included disclosure by the

Defendant pursuant to Fed. R. Crim. P. Rule 16 (b)(1)(C), as well as an opportunity to supplement such disclosure with information sufficient to satisfy the foundational requirements for admission of such evidence pursuant to Federal Rule of Evidence 702.  *Id.* at 1244-51. Because the entire process gave the Defendant sufficient notice and opportunity to make a showing sufficient to satisfy the requirements of Rule 702, and the Defendant failed to do so (particularly in failing to disclose the methodology used by the expert), the majority concluded there was no error in excluding the expert's testimony.

The dissenting judges read the trial record differently.  They found that the trial court had failed to give the Defendant notice and opportunity to make a showing or proffer regarding the expert's methodology.  The dissenters believed that the trial court had improperly based its decision to exclude the expert testimony on the Defendant's Rule 16 disclosure, without giving the Defendant an opportunity to present the necessary Rule 702 evidence at a separate hearing. *Id.* at 1259-73.

In conjunction with affirming the Defendant's conviction, the Circuit Court remanded the case to the original panel to address unresolved issues with regard to calculation of the sentence imposed and asset forfeiture.  No mandate has issued.

### B.      Post-Appeal Proceedings in This Court

Shortly after the Tenth Circuit revoked the Defendant's bail, this Court issued an Order (**#528**) directing him to report to the institution selected by the Bureau of Prisons to serve his sentence.[7]  After the Tenth Circuit denied his emergency motion for bail, he filed a similar Motion in this Court (**#538**).

---

[7] The reporting date was March 23, 2009.

He also filed a number of other motions: a Motion for New Trial (**#532**);[8] a Motion for Postponement of his surrender to the Bureau of Prisons for health reasons (**#536**, as supplemented at **#547**); a number of motions to seal documents pertaining to his health (**#534, 535**); and the subject Motion for Reconsideration (**#541**), Reply (**#546**), and Supplement (**#556**). In all of these pleadings, for a host of differing reasons, the Defendant requested a delay in reporting to prison to serve his sentence.

The Court held an expedited hearing to address the Motion for Postponement.  At that hearing, the Defendant announced that his health issue was not as dire as feared, but that he nevertheless desired to remain free on bond until the United States Supreme Court determined his Petition for Certiorari.  Conditioned upon the Defendant filing his Petition on March 20, 2009, this Court vacated its Order to report to the Bureau of Prisons until further order.

## IV.   ANALYSIS

The Defendant seeks to remain free on bail pending the determination of his Petition for Certiorari by the United States Supreme Court.  The Government opposes this request.

Once a Defendant has been convicted and sentenced, he has no presumptive right to remain free on bail.  The Court can grant bail only if the Defendant satisfies the requirements of

18 U.S.C. § 3143(b).[9]  The Defendant must show that:

---

[8] This is premised upon new information obtained in a deposition in a related civil case.

[9] The statute requires that a judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –

(1) he is not likely to flee or pose a danger to the community; **and**

(2) his appeal is not for the purpose of delay; **and**

(3) his appeal raises a substantial question of law or fact likely to result in reversal, a new trial, or  re-sentencing that would not include a period of incarceration.

By the terms of the statute, the Defendant must establish the first requirement by clear and convincing evidence.  In accordance with case law, the Defendant must establish the second and third requirements by a preponderance of the evidence.  *See United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985).

A.      **Is There a Risk of Flight or Danger to the Community?**

In this case, the parties agree that Defendant is not likely to flee and does not pose a danger to the community.  Accordingly, this requirement is satisfied.

B.      **Is the Appeal Brought for the Purpose of Delay?**

As to the second requirement, there is some question.  The Government does not directly argue that the Defendant's current appeal is brought for the purpose of delay, but implies that the appeal is just part of  a strategy designed to delay the time he must report to prison.  Even without an express argument by the Government, the Defendant has the burden of proof on this

---

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . .  and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in – (i) reversal, (ii) an order for a new trial,(iii) a sentence that does not include a term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

issue.  He must show that it is more likely than not that his appeal to the United States Supreme Court is **not** for purposes of delay.

The procedural history of this case lends support to the Government's belief.  The Defendant has been free on bail since his arraignment on December 20, 2005.  After his conviction was affirmed, the Defendant filed no motions until this Court issued its Order requiring the Defendant to report to the institution selected by the Bureau of Prisons.  He then sought bail first in the Tenth Circuit, then in this Court.  He consulted his doctor about a "suspicious growth" on his leg that the doctor had been monitoring over several months, and he requested a delay in his reporting date to allow for treatment and convalescence.  Indeed, with the exception of his Motion for New Trial, all of the Defendant's requests have all been directed at delaying his surrender to the Bureau of Prisons.

Unfortunately, by virtue of the terms of the Bail Reform Act, the Defendant's current request for bail was dependent upon the filing of his Petition.  In order to frame the issue with regard to bail, the Defendant shortened the time for filing of his Petition from the 90 days accorded him by the Supreme Court Rules.  In addition, he has repeatedly asked that if the instant Motion is denied by this Court, it extend some sort of stay in his reporting to prison to allow him to appeal such ruling to the Tenth Circuit and United States Supreme Court.  The justification he offers is that such extra time will allow him to "avoid[] the risk that [he] could surrender to the custody of the Bureau of Prisons and then be granted bail a few days later."

On the question of delay, the Defendant offers neither an affirmative statement that the appeal is not interposed for purpose of delay, nor any meaningful argument.  All the Defendant says is that the Government did not contend that delay was the purpose of his appeal to the Tenth

Circuit when he requested bail in 2007.

Under a preponderance of evidence standard, the Defendant's showing is insufficient. This finding alone would justify the denial of the Defendant's Motion, but in deference to the fact that the Government did not expressly raise the issue, the Court will proceed to consider the third requirement for bail.

### C.      Are There Substantial Questions of Law or Fact That, if Resolved in Favor of the Defendant, Would Likely Result in Reversal, New Trial, or Abrogation of the Defendant's Sentence?

In evaluating this requirement, the Court engages in a two-step inquiry.  First, it must determine whether the Defendant's Petition for Certiorari raises a "substantial question of law or fact."  18 U.S.C. § 3143(b) does not define what constitutes a substantial question of law or fact, therefore circuit courts have supplied a variety of definitions.[10]  The instructive case in the Tenth Circuit is *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985).  It teaches that a "substantial question" is more than non-frivolous; it is a close question or one that could be determined the other way.

The unusual procedural course of post-appellate proceedings in this case has resulted in complications that make ascertaining whether there is a substantial question of law or fact a more difficult exercise.  In ordinary circumstances, a defendant would flesh out the arguments in the Petition for Certiorari first, and then file a Motion for Bail in the trial court that highlights the

---

[10] Several circuits define it as a "close question" or "one that very well might be decided the other way."  *See United States v Eaken*, 995 F2d 740, 741 (7th Cir 1993); *United States v Steinhorn*, 927 F.2d 195, 196 (4th Cir. 1991); *United States v. Giancola*, 754 F.2d 898, 901(11th Cir. 1985).  The Ninth and Third Circuits use a "fairly debatable" criterion.  See: *United States v. Handy*, 761 F2d 1279, 1281-83 (9th cir 1985); *United States Montoya*, 908 F2d 450, 450-51 (9th Cir. 1990); *United States v. Smith*, 793 F2d 85, 89-90 (3d Cir. 1986).

substantial questions raised by the Petition. Here, however, the Defendant filed a Motion for

Bail that anticipated certain arguments being made in the Petition, then drafted a Petition that,

unfortunately, raises issues that, to some degree, differ from those anticipated in the Motion for

Bail.[11]  In addition, rather than progressively refining the arguments to a precise, focused point as

the case proceeded through each layer of the appeals process, the Defendant's position has

shifted laterally and, in some respects, even broadened.  At this point, some of the newly-formed

arguments raised in the Petition appear to be strategically crafted to create the appearance of

circuit split on issues of law with a hope of attracting the interest of the Supreme Court. But in

doing so, the Defendant has been forced to mischaracterize the holdings and reasoning of the

---

[11]For example, in the Motion, the Defendant contends that the following substantial
questions are presented: (1) with regard to the exclusion of the expert testimony, the trial court's
"erroneous understanding of Rule 16" and the *en banc* Court's "misunderstanding of the burdens
of proof on a motion in limine" operated to "nullif[y] Rule 16 and impose[ ] civil disclosure
burdens on criminal defendants"; (2) with regard to jury instructions on the element of
"materiality" of undisclosed information, the Tenth Circuit's "standard for assessing the
materiality of interim information portending future results" "squarely conflicts with the
materiality standards applied in other circuits"; (3) the Circuit erred in rejecting the Defendant's
arguments that a jury instruction on "reasonable basis principles" was required; (4) the jury
instructions given were patently defective, insofar as the Circuit "held" that the materiality
instruction was "not particularly informative" and it "held" that the "reasonable basis instruction
was confusingly worded and did not accurately state the law"; and (5) that "summary reversal is
appropriate" because the trial court "erroneous belief that Nacchio had committed an egregious
Rule 16 violation" infected its subsequent exercise of discretion.
    In contrast, the arguments actually raised in the Petition are: (1) "Whether the defendant
is entitled to acquittal or new trial because the Tenth Circuit, in conflict with the standards
applied in other circuits, erred by upholding the jury instructions bearing on the materiality of
the type of information at issue, and by holding that there was sufficient evidence that the
defendant failed to disclose material information and knew it"; (2) "Whether the judgment must
be reversed and remanded for a new trial because the Tenth Circuit approved the use of
impermissible procedures for exclusion of expert testimony under Rule 702 that conflict with
decisions of other circuits"; and (3) "Whether the Tenth Circuit's decision should be summarily
reversed because it misapplied decisions of the Court, mischaracterized the district court's
reasoning, failed to resolve all the issues presented, and held that Nacchio failed to address an
issue that was a principal focus of his brief."

Tenth Circuit panel and *en banc* decisions and to elevate *dicta* in cases from other circuit courts.

For purposes of this ruling, the Court focuses only on those questions that are squarely presented in <u>both</u> the Motion <u>and</u> in the Petition.  It is axiomatic that, because the Supreme Court will only consider arguments raised in the Petition, a question presented in the Motion but not found in the Petition cannot result in reversal of the conviction or a new trial.  At the same time, a question that appears in the Petition, but which is not discussed in the Defendant's Motion for Bail is not proper grist for consideration here.

With the understanding that the Court can only address those particular questions presented in both the Motion and Petition, the Court finds that there are three that the Defendant contends are substantial and support the granting of bail: (1) that the Tenth Circuit erred in affirming the definition of the materiality used by the trial court in instructing the jury; (2) that the Tenth Circuit erred with regard to the standard it used in evaluating certain jury instructions; and (3) and that the Tenth Circuit erred in affirming the exclusion of the Defendant's expert testimony.

The second step in assessing a request for bail pending appeal requires the Court to determine whether the resolution of a substantial question would be likely to result in an outcome of reversal, a new trial, or abrogation of a prison sentence.  *Id.*  In essence, a defendant must show that if one or more of the substantial questions raised were ultimately determined in his favor, the likely result would be a reversal of the conviction, a grant of a new trial on <u>all</u> counts of conviction for which a sentence of imprisonment has been imposed, or a re-sentencing that would result only in probation, a fine, or some other non-incarceration punishment.  *Id.* at 953.          In this regard, the Defendant's motion is effectively silent.  Beyond arguing the

substantiality of the legal and factual issues, in no instance does the Defendant proceed to

analyze the likely consequences that would flow from a ruling in his favor; rather, he appears to

simply assume that victory on the legal question will entitle him to reversal of the conviction

and/or a new trial.  Such confidence is not always warranted, as some errors committed by a trial

court are subject to "harmless error" analysis.  The Defendant's failure to indicate which errors

require reversal *per se* and which errors merely trigger harmless error review (much less his

failure to articulate why he would be able to demonstrate that a given error was indeed harmful)

is a persistent defect in his Motion that would hobble even a successful demonstration of a

substantial question of law or fact.

**D.**     **The Tenth Circuit Erred in Affirming the Trial Court's Definition of Materiality**

In his Petition, the Defendant argues that the Tenth Circuit affirmed the trial court's use

of a definition of the term "materiality" that is in conflict with that applied in the First Circuit.

The Defendant argued to the Tenth Circuit, and argues again now, that decisions from the First

Circuit provide for a different definition of materiality in cases involving stock trades based on

inside information.  The Government responds that a well-settled definition of materiality was

given in this case and the cases that Defendant relies upon do not deviate from it.  A brief review

of the proceedings in the trial court and the actual determination by the Tenth Circuit is

instructive.

**1.**     **Trial Court Proceedings**

The Defendant was charged with and convicted of insider trading - trading of stock by a

corporate insider, based on **material** information that is not available to the public.  *United*

*States v. O'Hagan*, 521 U.S. 642, 651-52 (1997) (emphasis added).  In this case, Defendant was

accused of trading Qwest securities based, in part, on forward-looking projections contained in an internal document that was not available to the public.  The trial court instructed the jury with the following definition of "materiality:"

> for you to find a material matter or a material omission, the Government must prove beyond a reasonable doubt that the matter misstated or the matter omitted was of such importance that it could reasonably be expected to cause a person to act or not to act with respect to the securities transaction at issue.  Information may be material even if it relates not to past events, but to forecasts and forward-looking statements, so long as a reasonable investor would consider it important in deciding to act or not to act with respect to the securities transaction at issue.  The securities fraud statute under which these charges are brought is concerned only with such material misstatements or such material omissions and does not cover minor or meaningless or unimportant matters or omissions. So the test is whether the matter misstated or the matter omitted was of such importance that it could reasonably be expected to cause a person to act or not to act with respect to the securities transaction at issue.

*Docket* # 480.  The last sentence of this instruction iterates the definition of materiality that the Supreme Court set forth in *Basic v. Levinson*, 485 U.S. 224, 231 (1988).[12]

## 2.      Appellate Proceedings

In his appeal to the Tenth Circuit, the Defendant argued that the trial court should not have used the *Basic* definition of materiality.  Instead, he contended a different definition should have been used: that as a matter of law, forward-looking projections can never be material. Had

---

[12] In *Basic*, the Supreme Court explained that the "standard of materiality under the securities laws, is that 'an omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.'"  485 U.S. 224, 231 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438 (1976)).  The definition is fact-specific, and turns upon "the significance the reasonable investor would place on the withheld or misrepresented information."  *Id.* at 240.

that definition been used, the Defendant contended the evidence would have been insufficient to support a conviction.

The Defendant argued to the Tenth Circuit, as he does here, that this limitation on the *Basic* definition of "materiality" had been adopted in two First Circuit cases, *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194 (1st Cir. 1996) and *Glassman v. Computervision Corp.*, 90 F.3d 617 (1st Cir 1996). Although these cases involved civil claims of securities fraud based upon allegedly misleading statements made to the public, rather than claims involving insider trading, the opinions included *dicta* with regard to the materiality of forward-looking projections. The Defendant argued that such comments by the First Circuit should have been incorporated into the instruction given on materiality in this case. The Tenth Circuit panel here found that the *Basic* definition of materiality given by the trial court gave was legally correct, and that based on this definition, the evidence was sufficient to support a conviction. The *en banc* Court did not review this determination.

### 3.   Is there a Substantial Question?

The first difficulty with Defendant's contention that there is a substantial question on the issue of materiality is that neither the Tenth Circuit's holding nor the import of the First Circuit cases upon which he relies are accurately characterized.

In his Petition, the Defendant states that "The Tenth Circuit erroneously held that [*Shaw* and *Glassman*] appl[y] only in false statement cases" (Petition at 21) and that "The Tenth Circuit's holding conflicts with other circuits" (Petition at 17). The Tenth Circuit did not so

hold.  The Tenth Circuit held[13] only that the materiality instruction given in this case stated the law correctly, 519 F.3d at 1159-60.

The Defendant also overstates the significance of the First Circuit cases upon which he relies.  As noted, *Shaw* and *Glassman* both were civil actions alleging securities fraud by omission or misrepresentation of statements to the public.  In both *Shaw* and *Glassman,* the First Circuit was presented with the issue of whether adequate allegations were asserted in a complaint.  In neither case did the First Circuit purport to express or adopt a new definition of "materiality" that differed from the *Basic* rule.

In *Shaw*, the First Circuit affirmed in part and reversed in part the trial court's dismissal of civil securities fraud claims, finding that a handful of alleged misrepresentations were actionable.  The comments of the court with regard to materiality arise in the context of the issue concerning the a security issuer's failure to disclose that revenue figures for the fiscal quarter in progress were lagging behind expectations and that the company was projecting a significant loss for the quarter.  *Id.* at 1207.  Although a footnote suggests that the court distinguished between "hard" information and "soft" information (which included "projections"),[14] the First

---

[13]The trial court addressed and rejected two alternative arguments by the Defendant regarding the materiality instruction, although neither issue is essential to the court's holding that the instructions actually given were correct.  The court deemed a supplemental jury instruction on the materiality of forward-looking statements proffered by the Defendant to be "simply confusing" with "nonsensical syntax," 519 F.3d at 1160, and rejected an argument by the Defendant that an SEC rule providing "a safe harbor for forward-looking statements filed with the SEC," applicable to securities fraud actions, should be extended to apply in insider trading cases as well.  The court rejected the invitation to expand the rule, finding that an insider's obligations to avoid trading on non-private information is qualitatively different than the duty of a speaker to avoid making false statement.  *Id.* at 1160-61.  Once again, neither of these issues constitute the specific holding of the court on the materiality issue.

[14] *Id.* at 1211 n. 21.

Circuit ultimately rejected the defendant's argument that because an issuer is never required to disclose forward-looking projections and forecasts, such are per se immaterial. *Id.* at 1209-10. Without speaking to the validity of the predicate assumption (*i.e.* that issues are never required to disclose forward-looking statements), the Court simply noted that a bright-line test deeming a particular category of information to be material or immaterial as a matter of law would be inconsistent with the flexibility of the *Basic* standard. *Id.* at 1210. Because the *Shaw* court was not called upon to determine, and indeed did not purport to determine, whether forward-looking statements are immaterial as a matter of law, comments to that effect (which this Court does not necessarily find in *Shaw*) must be regarded as *dicta*. By no means does *Shaw* announce a new rule of law with regard to the materiality of forward-looking information; if anything, it merely affirms that the materiality of present information that augurs future events is analyzed under the *Basic* standard. Thus, there is no "circuit split" between any rule established in *Shaw* and the instructions given to the jury here.

 *Glassman* addressed the sufficiency of allegations in a complaint in a civil securities fraud action directed at the accuracy and completeness of information disclosed to the public in conjunction with an initial public offering. The plaintiff alleged that the issuer should have disclosed the fact that mid-quarter revenues were below expectations, and the defendant argued that forward-looking projections were immaterial as a matter of law. 90 F.3d at 623-24. The First Circuit affirmed the dismissal of the claims, explaining that "deviations from internal forecasts, without more, do not produce a duty to disclose." *Id.* at 631. But the Court's decision was not based on the simple fact that the information involved forecasts and projections – had it done so, it would have run afoul of its prior decision in *Shaw*. Rather, the Court explained that

the deviation from projections was not material because of other circumstances – *i.e.* that the quarter was only half-finished, that the company typically experienced an upturn in business in the latter half of each quarter – which made the forward-looking projections unreliable and thus, immaterial.  *Id.* at 631-32.  *Glassman* relies heavily on language in *Shaw* that deprecates the materiality of projections, but it also acknowledges language from *Shaw* suggesting that, where their predictive value is high enough, forward-looking statements may be considered material. *Id.* at 632 & n. 23.  As with *Shaw*, no rule that forward-looking statements can never be material is announced in *Glassman*.

The *Basic* definition of materiality remains the current legal standard.[15]  It was applied by the Tenth Circuit in this case and by the First Circuit, explicitly in *Shaw* and implicitly in *Glassman*.  The Defendant raises interesting theoretical questions as to whether a different standard should be applied in with regard to forward-looking projections in insider trading cases, especially criminal actions.  However, there is no split of authority or contrary precedent which gives rise a close question as to whether the Tenth Circuit's holding in this case was correct.

Accordingly, the Defendant has not demonstrated a substantial question with regard to the materiality instruction.  Moreover, as discussed generally above, he has made no showing that any error with regard to that instruction is likely to result in a reversal, new trial or abrogation of his sentence.

_____

[15] The Defendant also cites to cases from the Seventh and Ninth Circuits, but all demonstrate application of the *Basic* definition of materiality.  *See Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 517 (7th Cir. 1989) (applying *Basic* definition); *accord Panter v. Marshall Field & Co.*, 646 F.2d 271, 289 (7th Cir. 1981); *Vaughn v. Teledyne, Inc.*, 628 F.2d 1214, 1221 (9th Cir. 1980).

**E.      The Tenth Circuit Erred in the Standard it Used to Evaluate the Jury Instructions**

The Defendant argues that the Tenth Circuit applied an incorrect standard in evaluating his challenges to the trial court's jury instructions, both with regard to his challenge to the materiality instruction as well as an instruction proffered by the Defendant but rejected by the trial court.  Again, a brief review of the record is helpful in determining whether a substantial question is presented.

**1.      Trial Court and Appellate Proceedings**

During the charging conference, the Defendant objected to the materiality instruction and sought to include information on forward-looking statements, cautionary information, and warnings **(#469)**.  The trial court overruled the objections.  The Defendant also tendered an instruction addressing the "reasonable basis" exception to civil liability for making misleading statements to the public.  The trial court declined the tendered instruction.

In his appeal, the Defendant contended that the materiality instruction was not sufficient because it did not contain the requested language that the Defendant believed was necessary to clarify the concept of materiality.  Defendant also argued that the excluded "reasonable basis" instruction was necessary to instruct the jury properly.

The Circuit Court reviewed both instructions to determine whether they, in conjunction with all of the other instructions, "accurately informed the jury of the governing law," as required by prior circuit precedent in *United States v. McClatchey*, 217 F.3d 823, 834 (10th Cir. 2000) and *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1262 (10th Cir. 2000).  519 F.3d at 1158-59. Finding that the materiality instruction set forth the Supreme Court's controlling definition in *Basic*, the Circuit concluded that the instruction was "not legally incorrect."  *Id.* at

1159, 1162. With regard to the proffered instruction, the panel determined that it addressed civil liability with regard to claims that public statements were misleading, and therefore it was not an accurate statement of the law for a case such as this, involving insider trading based upon information that was not made public. *Id.* at 1159, *citing United States v. Crockett*, 435 F.3d 1305, 1314 (10th Cir. 2006). The *en banc* Court did not address this issue.

### 2. Is There a Substantial Question?

The Defendant argues that the Tenth Circuit used the wrong test in evaluating the "materiality" and proffered "reasonable basis" instructions. He contends that instead of determining whether they "affirmatively misstated the law," the Tenth Circuit should have determined whether they "adequately advised the jury." The Defendant directs the Court to opinions from the Supreme Court, as well as the First, Second, Third, Fourth, Sixth, and Ninth Circuits, which he contends stand for the proposition that appellate courts must ensure that instructions given by trial courts are adequate to explain the law to juries, not merely correct statements of law.[16]

Again, the Defendant's argument is premised upon an inaccurate statement of what the Tenth Circuit did. In the Petition, the Defendant states that "The Tenth Circuit acknowledges

---

[16] Some of the opinions cited actually stand for other propositions - that no omission may be made from an instruction that shifts the burden of proof from the government to a defendant, *see United States v. Dotson*, 895 F.2d 263, 264 (6th Cir. 1990), and that judges must adjust instructions to the facts of a particular case, *see United States v. Holley*, 502 F,2d 273, 276-77 (4th Cir. 1974). However, others stand for the proposition stated. *See, e.g. United States v. Park*, 421 U.S. 658, 675 (1975) (suggesting that a proper instruction must "contain[] an adequate statement of the law to guide the jury's determination"); *accord United States v. Gordon*, 290 F.3d 539, 545 (3d Cir. 2002); *United States v. Escobar-De Jesus*, 187 F.3d 148, 164 (1st Cir. 1999); *United States v. Marsh*, 894 F.2d 1035, 1040 (9th Cir. 1990);*United States v. Hastings*, 918 F.2d 369, 373 (2d Cir. 1990).

that the skeletal materiality instruction was 'not particularly informative,' but **held** there could be no reversible error unless it affirmatively 'misstated the law.'" (Emphasis added.)  The Tenth Circuit did not **hold** that there could be no error unless the instructions misstated the law. Rather, it found on this record that because the materiality instruction given by the trial court was legally correct, the trial court did not err in giving it, and that because the proffered "reasonable basis" instruction was not an accurate statement of the law in this context, the trial court did not err in rejecting it.  519 F.3d at 1159.  Nothing in the Circuit's decision indicates that it determined that either of the instructions proposed by the Defendant were necessary to "adequately advise the jury," and thus, nothing in the Circuit's holding warrants an inference that it refused to apply that standard.

To the contrary,  these determinations made as part of the Circuit's consideration of the instructions as a whole.  The Court announced quite plainly the standard of review that it employed: "We review the instructions as a whole *de novo* to determine whether they accurately informed the jury of the governing law." 519 F.3d at 1158-59 (internal quotes omitted).   Indeed, among its reasons for affirming the rejection of the proffered instruction, the Circuit agreed with the trial court that, even if the proffered instruction was an accurate statement of the law, it was nevertheless properly excluded because it would have caused the materiality instruction to become misleading.  519 F.3d at 1161.  The Circuit used precisely the same analytical framework as that employed in other circuits.  Thus, there is no substantial question with regard to the analytical standard used.[17]

_____

[17]The Court notes that in his Motion, the Defendant raised another issue namely that the trial court should have given the reasonable basis instruction and that the Tenth Circuit should have reversed for its failure to do so.  This issue was not, however, preserved and asserted in the

Moreover, as noted earlier, the Defendant has made no showing as to the likelihood that this question, if resolved in favor of the Defendant, would result in a reversal, new trial or abrogation of his sentence.  Such a showing is particularly important here, insofar as any legal error in applying the wrong standard for evaluating the instructions would likely be mitigated by the Circuit's (unchallenged) determinations that neither of the instructions urged by the Defendant were both legally correct and non-misleading.  Thus, even if the Defendant demonstrated a substantial question as to the standard used by the Circuit in evaluating the jury instructions, he has not carried his burden of showing that the likely consequence of resolution in his favor would result in him avoiding his sentence of incarceration.

**F.**      **The Tenth Circuit Erred in Affirming the Exclusion of the Defendant's Expert Testimony**

The Defendant does not directly contend that the Circuit erred in holding that the trial court did not abuse its discretion in excluding the Defendant's expert testimony.  Instead, he makes several arguments with regard to defects in the process used by the trial court.  First, he argues that the process improperly shifted to the Defendant the burden undertaken by the Government in its Motion in Limine to exclude the evidence.  Second, he contends that the process did not create a sufficient record for a determination of the admissibility of the expert testimony.  Finally, he argues that the Circuit's decision "transforms criminal expert practice" because it requires criminal defendants to make Rule 16 disclosures sufficient to satisfy Rule 702.  The Government responds that the Defendant has shown no substantial question.  In addition, it contends that if there was a reversal on this issue,  it would not result in reversal or

_____

Defendant's Petition, and therefore is not considered here.

new trial, but instead in a remand for an evidentiary hearing to determine whether the trial

court's error in excluding the expert testimony was harmless.

In evaluating whether there is a substantial question, it is helpful to refer to the historical

context with regard to the law and procedure applicable to admissibility of expert testimony.

Then, it is important to understand how the issue arose and was handled in the trial court, and

ultimately it is critical to consider the precise determination that the Tenth Circuit made.

### 1.      Federal Rule of Evidence 702

The foundational requirements for admission of expert opinion evidence are set forth in

Federal Rule of Evidence 702.  It  provides:

> If scientific, technical, or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training, or education, may testify thereto in the form
> of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

The current version of Rule 702, which became effective December 1, 2000,  was adopted in

response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and subsequent

cases applying it, including *Kumho Tire Co. v. Carmichael*, 526 U.S. 137(1999).

The prior version of Rule 702[18] was "expert centric."  Once a witness was qualified by

knowledge, skill, experience, training, or education, he or she could express any opinion falling

with in the scope of his or her expertise.  From this requirement arose the practice of presenting

---

[18] Rule 702 read in full as follows: "If scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a
witness qualified as an expert by knowledge, skill, experience, training, or education, may testify
thereto in the form of an opinion or otherwise."

an expert at trial, then providing an opportunity for *voir dire* as to the expert's qualifications and for an objection.  A court then either received the expert and defined the scope of expertise, or rejected the expert.  Thus, under the old Rule 702, a party needed only to establish than an expert had sufficient qualifications in a particular subject area in order to have the expert's opinion testimony admitted.

In *Daubert*, the Supreme Court recognized that simply because a witness had particular skill, knowledge or experience did not mean that the witness's testimony was reliable.  Too often, it concluded, witnesses with knowledge or expertise areas without scientific discipline ("junk science") were allowed to offer opinions to juries.  Therefore, the Court charged trial courts with the responsibility of acting as gatekeepers to exclude unreliable testimony.  To assess the reliability of scientific opinion testimony, trial courts were instructed  to consider a non-exclusive list of factors.[19]  In *Kumho Tire,* the Court expanded the application of the *Daubert*

---

[19] The *Daubert* Court enumerated five factors: (1) whether the expert's technique or theory has been or can be tested; (2) whether the technique or theory has been subject to peer review and publication; (3) whether there is a known or potential rate of error of the technique or theory when applied; (4) whether standards and controls for the technique or theory exist and are used; and (5) whether the technique has been accepted in the scientific community.  Subsequent cases have broadened the inquiry and enumerated additional factors, including: (1) whether the expert employed the same degree of intellectual rigor in testifying as he would be expected to employ in his professional life; (2) whether the expert proposes to testify about matters growing naturally and directly out of research he or she conducted independent of the litigation or whether the expert developed opinions expressly for purposes of testifying; (3) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion (*i.e.,* whether there is too great an analytical gap between the data and the opinion proffered); (4) whether the expert adequately accounted for obvious alternative explanations; (5) whether the expert was as careful as he or she would be in regular professional work outside of paid litigation consulting; (6) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give; (7) the extensiveness of the expert's credentials; (8) the expert's ability to articulate a process that he or she applied; (9) whether the industry adheres to a particular practice; and (10) whether the opinion consists of summary conclusions or broad generalizations based on perfunctory analysis with no supporting specifics.

factors to all expert testimony.   It also expressly left the procedure to be used to determine admissibility to the discretion of trial courts.  526 U.S. at 141-42.  The combination of *Daubert* and *Kumho Tire* shifted the focus of a trial court's inquiry from exclusive consideration of an expert's qualifications to determination of the reliability of the witness's discipline and practice. In that regard, it made the determination of admissibility of expert testimony more "discipline centric."

The current version of Rule 702 reflects another evolutionary step.  The detailed requirements of Rule 702 rule further reduces the importance of "who" expresses the opinion, and instead direct courts to consider "how" the opinion was derived.  Put differently, the new Rule 702 is "opinion centric."   The rule sets out four foundational requirements: (1) that the witness have sufficient knowledge, skill, experience, training or education; (2) that the witness used to reliable principles and methods to derive the opinion or as a basis for his or her testimony; (3) that the witness used sufficient facts and data (as required by the principles or methods); and (4) that the witness reliably applied the principles and methods to the facts of the case.  The burden of establishing these foundational components is upon the party that proffers the opinion.  *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.1 (10th Cir. 2001); *see also* Fed. R. Evid. 702 advisory committee's note.

Rule 702 does not, however, describe the process by which admissibility of expert testimony is determined.  This is governed by other Federal Rules of Evidence, notably Rules

---

*See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1993); *Hynes v. Energy West, Inc.*, 211 F.3d 1193 (10th Cir. 2000); Fed. R. Evid. 702 advisory committee's note.

103 and 104.[20]  It also does not specify what, if any, disclosures must be made by the proponent

of the evidence prior to any determination.  These are governed by  Federal Rule of Civil

Procedure 26[21] in civil cases and Federal Rule of Criminal Procedure 16(b)(1)(C)[22] in criminal

cases.  Interestingly, neither Fed. R. Civ. P. 26 nor Fed. R. Crim. P. 16 have been amended since

the amendment of Rule 702.

　　　In the eight years since the current version of Rule 702 became effective, the law and

practice relative to the admission of expert opinion evidence has been evolving.  Courts and

attorneys have experimented[23] with procedures to implement Rule 702.  These efforts, in

---

[20] Rule 104 sets out the procedures applicable to "preliminary matters" which include the determination of the admissibility of evidence. As noted in Comments to the rule, the applicability of a particular rule of evidence turns upon the existence of a fact or condition.  This rule allows courts to conduct hearings to determine such facts and conditions.  The determination of whether Rule 702's requirements are satisfied may involve such fact finding. Courts are accorded broad latitude as to the procedures used to make admissibility determinations under Rule 104.  *See, e.g., United States v. Rodriguez-Felix*, 450 F.3d 1117, 1122-23 (10th Cir. 2006). Rule 103 sets out the protocol for preserving a record relative the admission or exclusion of evidence.

[21]In pertinent part, civil litigants must disclose the identity of their expert witnesses and provide written reports from the expert containing a statement of the expert's opinions, his or her qualifications, and the "data or other information considered by the expert" in forming the opinions.  Fed. R. Civ. P. 26(a)(2)(A),(B).

[22] In pertinent part, Fed. R. Crim. P. 16 requires criminal defendants to "give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. . . .  This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  Interestingly, neither Fed. R. Civ. P. 26 nor Fed. R. Crim. P. 16 has been amended to reflect the current requirements of Rule 702.

[23] This has created wide disparity in practice.  For example, in the Tenth Circuit, trial courts may either conduct a hearing or resolve Rule 702 issues by other means. *See, e.g., United States v. Benally*, 541 F.3d 990, 993 (10th Cir. 2008); *United States v. Blake*, 284 F. App'x. 530, 540 (10th Cir. 2008); *United States v. Sutherland*, 191 F. App'x. 737, 741 (10th Cir. 2006).  On this Court (with five active and four senior judges),  I am aware of only three judges who have conducted Rule 702 evidentiary hearings.  As one, I have presided over 30 days of Rule 702

conjunction with the fundamental changes caused by *Daubert* and amendment of Rule 702 and

by the interplay with other procedural rules have given rise to much confusion.

This case demonstrates such confusion[24] and reflects the continuing evolution in legal

thought as to how courts can best assess and determine the admissibility of expert opinion

evidence.  Because this area of evidentiary law is both unsettled and evolving, many interesting

---

hearings in the last four years.  My procedures and a form motion to request a hearing are posted
on the Court website.
http://www.cod.uscourts.gov/Documents/Judges/MSK/msk_702procedures.pdf  Much of the
time spent in such hearings is devoted to developing a common understanding of what is an
opinion, a methodology, or an assumption/fact.  During these hearings, reliance upon an expert's
report (Rule 26) or disclosure (Rule 16) has not often proven helpful because these are not
drafted to address the requirements of Rule 702.

A very homely, and admittedly imperfect, analogy that I routinely use is that an opinion
is the witness's end product.  It is like a "cake."  For it to be admissible, there must be a "baker"
(who has the requisite skill, knowledge, training and education), a "recipe that reliably results in
a cake" (a reliable method or principle), the baker must reliably follow the recipe and must use
the amounts of ingredients (facts and data) required by it.  The Rule 702 hearing does not
address what flavor the cake is, whether it is tasty, whether it rose high enough, or whether it is
frosted or decorated.  In other words, issues of whether a jury might want to eat the cake are
issues of the  weight to be given to the opinion.

[24] For example, although Rule 702 clearly governed the admission of the expert witness
testimony in this case, in all of the orders and opinions in this case, there is only one reference to
its terms and provisions.  Without apparent recognition of any difference between Rule 702 and
*Daubert*, the parties and courts have referred to the admissibility of expert opinion testimony as a
"*Daubert*" determination or process.  In addition, the parties and opinions repeatedly refer to the
exclusion of Defendant's expert witness,  rather than his opinions.  Such references are
technically inaccurate. The witness was not "excluded"; he testified as to factual matters.  Only
his expert opinions were excluded.  But these slips harken back to the former practice under the
old Rule 702 when the determination of the admissibility of expert opinion testimony rested
solely on "who" the witness was. Under the old rule, witnesses, rather than opinions, were
excluded.  Finally, the briefs, petition, and the opinions are all salted with references to the
expert witness's credentials, especially the many times that he testified in other matters.  Because
current Rule 702 predominantly focuses upon "how" an opinion is derived, the fact that a
witness provided expert opinion testimony in another or in many matters is usually irrelevant.

issues have arisen[25] and will continue to arise.  But an interesting, and even important issue is not

necessarily a substantial question in the context of this case.

### 2.      The Rule 702 Issue in the Trial Court.

During the trial, Defendant announced his intention to present a expert testimony

regarding, *inter alia*, the market for stock generally and Qwest stock specifically, and analysis of

the stock trades that officers of other companies were making at the time of the transactions at

issue.  In accordance with Fed. R. Crim. P. 16 (b)(1)(C), the Defendant submitted a seven-

paragraph summary of the proffered opinions.  In response, the Government filed a motion

seeking a more detailed disclosure (**#296**).  In it, the Government argued that Defendant's

disclosure did not satisfy the requirements of Rule 16 in that it did not adequately describe the

expert's opinions or provide bases therefor.  In addition, the Government argued that the

disclosure did not satisfy the requirements of Federal Rule of Evidence 401, 403, 602, 702, or

704.  The trial court agreed, finding that Defendant: (1) had "offer[ed] no bases or reasons

whatsoever" for the opinions offered, as required by Rule 16; (2) had not adequately clarified if

the expert's testimony would concern facts or opinions, as required by Federal Rule of Evidence

602; (3) had failed to establish that the expert was qualified to testify on the topics presented, as

required by Federal Rule of Evidence 702; (4) had failed to the establish that the testimony

would be relevant or helpful to the jury and not confusing, as required by Federal Rules of

Evidence 401, 403, and 702; and (5) had failed to clarify whether the testimony would concern

Defendant's mental state and, thereby, potentially violate Federal Rule of Evidence 704.  The

---

[25] For the aid of practitioners, I have set out my current understanding about how Rule
702 works in *United States v. Crabbe*, 556 F. Supp. 2d 1217 (D. Colo. 2008).

trial court ordered Defendant to "produce an expert disclosure compliant with the federal rules described" in the order **(#297)**.  The order did not outline precisely what should be submitted, but the Defendant did not seek clarification.

The Defendant then produced a ten-page disclosure, to which the Government responded by filing a sixty-three page motion in limine **(#334)**.  In it, the Government argued that the Defendant still had not satisfied the requirements of Rule 16 or Federal Rules of Evidence 403, 602, or 702.  Specifically, the Government complained that: (1) the testimony consisted of a recitation of facts not within the witness's personal knowledge; (2) the testimony was not relevant and would not be helpful to the jury; (3) the expert was not adequately qualified to give the proposed testimony; (4) the facts upon which the expert relied in arriving at his opinion were not facts a reasonable expert would rely upon; and (5) Defendant did not establish that the expert used a reliable methodology in reaching his opinions.  Nine pages of the argument addressed Defendant's purported failure to satisfy Rule 702, noting repeatedly that the Defendant had presented "no indication" that the expert had "reached the opinion by applying reliable principles and methods to an adequate and correct set of facts."  The Defendant's response included only brief discussion of  Rule 702 and a conclusory statement that the expert's opinions to be offered "[were] proper under Rule 702" **(#340).**  The response provided no indication, either specifically or by proffer, of the methodology or principles used, how they were applied, or what facts and data was considered by the witness in formulating his opinions.

The trial court offered no opportunity for argument, and neither party requested an evidentiary hearing.  In an oral ruling, the trial court granted the Government's motion in limine finding "egregious" deficiencies under the Federal Rules.  It excluded the expert opinion

testimony on a number of rationales, "most convincingly [that] Defendant had] made no attempt to comply with Rule 702 or *Daubert* and establish that either the expert's testimony was 'the product of reliable principles and methods' or that the expert had 'applied principles and methods reliably in this case.'"  The trial court found the Defendant's representations that the expert had "completed extensive review of SEC filings, press releases and other financial data and applied his academic study and professional experience in economics and the public market to formulate opinions" inadequate under Rule 702, which requires that a witness who bases his opinions upon knowledge and experience to "explain how that experience led to the conclusion reached, why the experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts in this case."  The trial court also questioned whether the testimony would be relevant or helpful to the jury under either Rule 702 or 403, and noted that many of the proffered opinions were statements of fact under Rule 602.  After the ruling was made, Defendant's counsel asked the trial court to be heard on the issue, but the trial court refused. Proceedings resumed and the expert witness was allowed to give factual summary testimony only.

### 3.     The Tenth Circuit's Determination with Regard to the Trial Court's Rule 702 Decision

As noted, the three-judge panel determined, by split decision, that the trial court abused its discretion by determining the admissibility of the expert testimony based solely upon the Rule 16 disclosure and without allowing the Defendant an opportunity for an evidentiary hearing in which it could present the expert witness and the Government could engage in *voir dire*.

Sitting *en banc*, the Court was also divided as to this issue.  Its division was based upon differing interpretations of the trial court record.  The majority found that the trial court did not

exclude Defendant's expert testimony as a sanction for failure to make an adequate disclosure pursuant to Rule 16, but instead as a substantive determination under Rule 702 based upon all disclosures the Defendant made. 555 F.3d at 1242 & n.7.  The majority noted that the trial court gave the Defendant three days to supplement his initial Rule 16 disclosure, which he did.  In the supplement, he disclosed that the witness had conducted a "study of the Questioned Sales in relation to various benchmarks and other relevant criteria" and that he had "analyzed Qwest's guidance, its actual stock performance and reaction from the investment community; Qwest's guidance history compared to the guidance history of other telecommunications firms; and various facets of Qwest's revenue from indefeasible rights of use."  It was to this disclosure that the Government filed its lengthy objection contending, among other things, that an inadequate showing had been made as to the witness's methodology and its reliability.  To the Government's arguments, the Defendant filed a seven page response stating a conclusion that the witness would opine on "specialized knowledge as contemplated under Rule 702, which would assist the trier of fact" and that the witness had undertaken "extensive review" to formulate his opinions.  Given this lengthy history, the majority found that the Defendant had sufficient opportunity, without an evidentiary hearing, to show the methodology used by its witness and the reliability of the methodology.  Because the Defendant did not do so, the majority held " that the expert testimony was properly excluded."  555 F.3d at 1256.

Both the majority and the dissent agreed that the trial court was authorized under Rules 702 and 104 to craft a procedure for determining whether the opinion testimony of Defendant's expert was admissible.  *See* 555 F.3d at 1260 (dissenting opinion). The dissenting members of the Court simply read the trial record differently and, consequently, made different findings.

They found that, although the trial court had discretion to require a proffer sufficient to satisfy Rule 702 instead of conducting an evidentiary hearing, it did not adequately advise the parties of the procedures it intended to impose.  555 F.3d at 1265.  In addition, the dissenters found that in making a written proffer, the Defendant did not intend to abandon his right to present evidence with regard to 702 issues at a hearing, nor did he concede that his written disclosure should be treated as his Rule 702 showing.  The dissenting judges regarded the exclusion of the expert opinion evidence as a sanction for failing to comply with Rule 16 disclosure obligations.  *Id.* at 1277.  Under these circumstances, the dissenting judges concluded that the trial court's exclusion of proffered expert testimony was an abuse of discretion.

### 4.      Is There a Substantial Question?  Is it One of Law or Fact?

This Court begins with the obvious - the holding of the Tenth Circuit is simply that the trial court did not abuse its discretion in excluding the opinion testimony of Defendant's expert.  The holding announces no new rule of law, nor does it endorse the procedure used by the trial court to the exclusion of other methods of making Rule 702 determinations.  Both the majority and dissenting judges agree that the trial court had discretion to establish a process to determine Rule 702 issues, and they agree that the process did not need to include an evidentiary hearing.  Their differing conclusions spring simply from differing assessments of the trial court record.  In essence, their interpretations of the record are akin to differing factual findings.

Viewed in this light, it is difficult to apply the substantial question analysis.  Substantial questions of law are those about which judges can fairly disagree.  But it is not so clear what the standard is when the appellate court is making determinations that are akin to factual findings.  The parties have not pointed the Court to authority addressing this issue, and the Court is not

aware of any.  The matter is further complicated by the burden and standard of proof enunciated in *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985).  *Affleck* expressly adopts a preponderance of the evidence standard.

One way to look at this issue is by applying the preponderance of the evidence standard, which ordinarily requires the party with the burden to show that something is more likely than not.  Here, the Defendant has not demonstrated that it is likely that the dissent's interpretation of what occurred in the trial court is more accurate than the interpretation of the majority.

If reviewed in the light of a legal question, then the Court focuses upon the standard of review that was applied by the Tenth Circuit - whether the trial court abused its discretion.  It does not appear that there is any substantial question that this standard was the correct one to be applied.  Indeed, the case authority relied upon by the Defendant all reflects application of this standard.  As to applications of that standard, all of the decisions to which the Defendant refers were fact specific, and the facts as well as the procedural context are distinguishable from the facts in this case.  None of the other cases are criminal matters; none involve a series of disclosures made in response to a hybrid challenge to both the sufficiency of disclosure under Rule 16 and the sufficiency of the foundation under Rule 702.  Thus, they do not demonstrate that there is a substantial legal question.

Questions of what process should be used in a criminal case to make Rule 702 determinations and whether a Rule 16 disclosure can be treated as a party's sole proffer under Rule 702 are interesting and important.  But they are not the questions that were determined in this case and they have not yet been determined elsewhere.  Therefore, they create no substantial question.

**5.      If the Defendant Prevailed on These Questions, Would it Likely Result in a Reversal of his Conviction, a New Trial, or an Abrogation of his Sentence?**

Assuming that there is a substantial question of law or fact, however, the Defendant has not addressed how the resolution of the question would affect his conviction and sentence, and therefore has not satisfied his burden of proof.

The Government makes a perceptive argument that an error in excluding the expert opinion evidence testimony would not likely (or at least would not automatically) compel a reversal of the judgment of conviction or a new trial.  Not all trial court errors require reversal or a new trial.  That turns on whether the error is harmless or not.  An error in not conducting a hearing to resolve Rule 702 issues would be harmless if, after such hearing, the evidence was ultimately excluded.  To this Court's understanding, the Defendant has never made a proffer as to what evidence he would have presented at an evidentiary hearing.  Therefore, a reviewing court could not determine whether the evidence would have been admitted if a hearing had been held.  If the failure to conduct a hearing was error, it is likely that the matter would be remanded to the district court to conduct a hearing to determine whether the proffered expert testimony was admissible.  Only if the district court concluded that the evidence was admissible would reversal or a new trial be appropriate.

For the foregoing reasons, the Court finds that the Defendant has not established a substantial question of fact or law, or that if the question raised were determined in his favor, that there would be a reversal of his conviction, new trial or abrogation of his sentence.

**V.      CONCLUSION**

The Defendant has not shown that his appeal has not been interposed for purposes of

-33-

delay, that any substantial question of law or fact has been raised in his appeal or that if he were to prevail on the questions he has raised that their determination would likely result in reversal of his conviction, a new trial or abrogation of his sentence.  Accordingly, he has not shown that he is entitled to bail pursuant to Bail Reform Act of 1984, 18 U.S.C. §3143(b).

**IT IS THEREFORE ORDERED** that:

1.) The Emergency Motion for Reconsideration **(#541)** is **GRANTED,** but upon reconsideration the Defendant's request for bail is **DENIED**.

2.) The Court will concurrently issue a separate Order setting forth the date, location, and other details of the Defendant's surrender to the institution selected by the Bureau of Prisons.

Dated this 7th day of April, 2009

BY THE COURT:

Marcia S. Krieger
United States District Judge